JOHNSTON P. LEE, ULYSSES B. BREWSTER and HENRY B. HALL, Garnishees of ELBERT WOLF, *vs.* GEORGE W. TINGES.

Where the same questions presented by the bill of exceptions are relied on, upon a motion for a new trial, the court below have the right and in general ought to require the party to *waive* his exceptions, before they will entertain the motion.

But if the motion is heard and decided, and it does not *appear* that the party was required to make such waiver, the appellate tribunal will nevertheless entertain the appeal.

In an attachment on warrant, the claim produced before the magistrate was an account consisting of charges for various items of merchandise, and the *short note* accompanying the attachment, was for goods sold and delivered, and money had and received. HELD:

That two promissory notes given by the defendant to the plaintiff, in connection with proof showing that they were for part of the account constituting the claim, are admissible as evidence tending to show an *acknowledgment* by the defendant of a portion of the account.

In attachment cases the creditor is not bound to produce before the justice *all* the written evidence in his possession, which might be used before the jury to establish the debt, and entitle him to condemnation of the property attached.

Where goods are sold and regularly charged in the ordinary course of business, and a promissory note is subsequently given by the purchaser, for the amount of the claim, the seller may, after the note falls due, sue on the account, notwithstanding the note.

A promissory note is sufficient evidence to sustain an action upon the common count, for money had and received by the payee against the maker.

The testimony of a book-keeper in a store, who did not sell the goods, but was in the habit of presenting the accounts to the defendant at different times, and receiving his notes for previous purchases, that the amount of

one of such notes was the portion of the account sued on, then due, is admissible as evidence.

But he is not competent to speak of the correctness of the account, or of the amount due thereon, from any knowledge on the subject, which, as *book-keeper*, he derived from the other clerks in the store.

If a debtor defendant seeks to discharge himself from a claim preferred against him, by relying on the credit entries in the account rendered, he thereby admits in evidence against him the debit entries in the same account.

The plaintiff in an attachment may recover a less sum than the amount sworn to by him before the justice.

The question on the examination-in-chief, "whether the witness" (who was the defendant's clerk,) was in the habit of acting with the defendant's consent, and with his approbation to every extent, in reference to buying goods and otherwise providing for his store during his absence," is a *leading* question.

Where a question embodies a material fact, and admits of an answer by a simple negative or affirmative, it is leading.

Leading questions may be asked, even in a direct examination, where the witness appears hostile to the party calling him, or unwilling to give evidence, or where an omission in his testimony is evidently caused by want of recollection, which a suggestion may assist.

A salesman and confidential clerk in a retail store, in the ordinary and usual course of business, has no authority to sell by wholesale, in payment of a debt due by his employer.

A clerk in a retail store sold goods by wholesale in settlement of a claim due by his employer, and subsequently after these goods were attached, and the business affairs of his employer were *materially changed*, he made sales to other creditors in a similar way, which his employer approved and confirmed. HELD :

That evidence of these subsequent sales, under such circumstances, was not admissible for the purpose of showing a ratification of the first sale by the employer.

Collateral facts or such as do not afford a reasonable presumption or inference, as to the principal fact or matter in dispute, should be excluded.

APPEAL from the Superior Court of Baltimore City.

*Attachment* on warrant, instituted by the appellee on the 21st of October 1850, against Elbert Wolf, as an absconding debtor. The plaintiff's claim, to which he made affidavit, was of an account consisting of various items of merchandise, amounting to $1787.28 : credited by cash, September 16th 1850, $258, and October 5th 1850, $498.40, leaving a bal-

## DECEMBER TERM, 1854. 217

Lee and Brewster, Garn. of Wolf, vs. Tinges.

ance due of $1030.88. The *short note* accompanying the attachment was for goods sold and delivered, money lent and advanced, paid, laid out and expended, and money had and received.

The sheriff returned the writ, "attached as per schedule." The appellees, Lee and Brewster, upon petition were admitted to appear as garnishees upon giving special bail, they being non-residents, and plead "*non assumpsit*" for the defendant, and "*nulla bona*" for themselves.

*1st Exception.* The plaintiff produced a witness, Alnutt, who stated that the account annexed to the affidavit, warrant and attachment, was correct: but after refreshing his memory by looking at a promissory note of Wolf's in favor of Tinges, for $241.61, dated the 13th of September 1850, and payable in one month, which he proved was signed by Wolf, he stated that at the time of issuing the attachment, the only portion of said account which was due, was the sum of $241.61. On cross-examination the same witness stated, that he did not himself sell or deliver the goods mentioned in said account, (though he had frequently seen Wolf in plaintiff's store buying goods,) and had no personal knowledge of their sale or delivery to Wolf at the time thereof, he being the plaintiff's book-keeper, and having made out said account in his books, from information communicated to him by the other clerks. Being again examined in chief, he stated that he had been in the habit of obtaining from Wolf his notes for previous purchases, and that he presented to him the account as filed at different times, and soon after the dates set forth in said account as of purchases, and that Wolf subsequently to such presentment gave witness a promissory note in favor of Tinges, dated the 13th of March 1850, for $498.40, payable in six months, (which note was produced and Wolf's signature to it proved,) for a portion of said account, and afterwards enclosed the note for $241.61, above mentioned, to Tinges, in a letter, in which he states that he had been trying in vain to make collections, and requests that Tinges would accept the enclosed note for balance due on former note, (which was

the note for $498.40.) The garnishees objected to the admissibility of these notes in evidence, under the proceedings in this cause, when they were offered, but the court (FRICK, J.,) overruled the objection, and admitted the evidence to go to the jury, and to this ruling the garnishees excepted.

*2nd Exception.* The garnishees then gave evidence of a sale of the goods, upon which the attachment was levied, to William F. Lee, their agent, by Merritt the confidential clerk and agent of Wolf, under circumstances substantially as follows: Wolf was indebted to the garnishees, Lee and Brewster, a New York firm, in October 1850, in the sum of $1197.01, for goods purchased by him from them, for which he had given his notes. Becoming doubtful of Wolf's solvency, they sent their agent, William F. Lee, to Baltimore, to inquire into Wolf's condition and take steps to secure their debt. Lee arrived in Baltimore on the 13th of October, and found that Wolf was in Washington, where he followed and saw him; Wolf then promised to go with Lee to Baltimore by the ten o'clock train the next morning, to make a statement of his affairs, but he was not at the cars that morning, and Lee found, on reaching Baltimore, a letter from Wolf, stating that he was on his way to Philadelphia and New York. Several circumstances, such as the confusion in which he found Wolf's store, several attempts to set fire to it, and the cancellation of the policy thereon by the Insurance Company, having aroused Lee's suspicions, he resolved to secure the garnishees, and after some negotiations, Merritt, the confidential clerk of Wolf, acceded to Lee's proposition, to purchase goods of Wolf at retail prices, and pay for them with Wolf's notes, which Lee and Brewster held. The invoicing and receiving the goods under this arrangement, was commenced on October 17th, and the transfer completed late on the night of the 18th. These goods were seized by the sheriff on the morning of the 19th of October, while they were at the railroad depot, under attachments issued at the suits of several parties. The attachment in this case was issued on the 21st of October, and laid on the goods already in the sheriff's custody.

DECEMBER TERM, 1854.        219

Lee and Brewster, Garn. of Wolf, vs. Tinges.

The garnishees further proved by Merritt, that he was Wolf's salesman and confidential clerk, in all except his financial matters, which Wolf conducted himself; that Wolf returned to Baltimore on the morning of the 19th of October, when witness saw him and told him all he had done in regard to the sale to Lee, and he did not disapprove of it; that when Wolf left the city, his instructions to witness had always been to go on with his (Wolf's) business, as if it were witness' own. The garnishees then, for the purpose of showing by particular facts the general scope of the authority under which Merritt acted habitually on behalf of said Wolf, asked him whether said Wolf was ever absent from the city? To which witness replied, that he frequently was, having stores both in Washington and in parts of Virginia, as well as in Baltimore. The garnishees then further asked whether he, the witness, was in the habit of acting by said Wolf's consent, and with his approbation to every extent, in reference to buying goods or otherwise providing for Wolf's said stores during his absence? This question was objected to, and the court sustained the objection, and refused to let the question be asked, and to this ruling the garnishees excepted.

*3rd Exception.* The garnishees further proved by Merritt, that on the morning of the 19th of October, Wolf having returned to Baltimore, called at witness' house before store hours, when witness stated to him fully the particulars of the settlement with Lee and Brewster, to which Wolf made no objection, and witness then, according to the best of his recollection, delivered to Wolf the receipt and order received from Lee, for the notes of Wolf held by Lee and Brewster. The garnishees then, for the purpose of showing a ratification by Wolf of the conduct of Merritt, and further illustrating the general scope of the authority under which Merritt habitually acted for Wolf, proved by the witness that after said period, (the store in Baltimore being shut up and closed,) the witness continued in Wolf's employment at his request, and was sent by him to Virginia, to the stores of Wolf there: and then offered to prove that the witness within the week following

the transaction with Lee and Brewster, settled the claims of several other creditors of Wolf, in the same manner in which he had with said Lee and Brewster, and that Wolf approved of and confirmed the same. But the plaintiff objected to said evidence, as of matters subsequent to the issuing of this attachment, and the court sustained the objection, and refused to permit the evidence to be given, and to this ruling the garnishees excepted.

The verdict was in favor of the plaintiff for $241.61, and thereupon the garnishees, "not waiving their exceptions," moved for a new trial: 1st, Because the verdict is against the evidence and the weight thereof: 2nd, Because the undisputed facts in the case amounted in law to a ratification by Wolf of the act of his agent Merritt, by which the goods in controversy passed to the garnishees as their own property, and the verdict is in this particular contrary to the law applicable to the case: and 3rd, Because the verdict is contrary to law in other particulars. This motion the court overruled. The garnishees then made a motion in arrest of judgment, which they afterwards withdrew, and judgment of condemnation was rendered upon the verdict, from which they appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and MASON, J.

*F. K. Howard* for the appellants, as to the motion made by the appellee to dismiss the appeal, upon the ground that the exceptions had been waived by the motion for a *new trial*, argued, that the case of *Townshend vs. Townshend*, 9 *Gill*, 519, settles the question of practice, in this particular, in this State; for in that case a similar motion for a new trial was made, and the point that the appeal should be dismissed raised in this court, and yet the Court of Appeals considered the exceptions and *reversed* the judgment upon them. He also cited 9 *Porter*, 109, *West vs. Cunningham*, and 15 *Conn.*, 430, *Chambers vs. Campbell*. Upon the merits of the case he then argued the following points:

1st. That the evidence objected to in the first exception should have been rejected. If the account filed with the attachment proceedings was that by which the debtor was indebted, (as required by the act of 1795,) the notes were necessarily inadmissible as substantive proof, which was the character in which they were offered. They were not introduced merely as memoranda to prove amounts, but as actual evidence, in themselves, of indebtedness not otherwise proven. 2 *H. & J.*, 192, *De Sobry vs. De Laistre.* 12 *G. & J.*, 53, *Dawson vs. Brown.* 2 *Md. Rep.*, 335, *Lambden vs. Bowie.*

2nd. The said evidence was likewise inadmissible, being contrary to the account filed with the attachment. The proof establishes that $241.61 was due on the 13th of September 1850, and continued due until the attachment issued, there being no evidence of any other indebtedness at or between those periods. The account shows the payment of $498.40 on October 5th, 1850, which was more than double the amount proven to be then due, and of course showed an extinguishment of indebtedness prior to suit brought.

3rd. That the evidence rejected in the second exception should have been admitted. The extent of Merritt's agency to buy and sell for Wolf was an important matter in controversy, and the garnishees had the right to introduce any proof as to the extent of that agency which would have been admissible against Wolf himself. Of this nature the proof offered clearly was, being proof of Merritt's habitual conduct as Wolf's agent, by Wolf's consent, in similar matters prior to the transaction in controversy. *Story on Agency, secs.* 55, 56, 89, 90.

4th. That the evidence offered in the third exception, was competent to show Wolf's approbation of Merritt's conduct in the case at bar, and thereby to show that he ratified the same. It was also competent to show the general scope of Merritt's habitual agency for Wolf, because, although the acts were done after those in controversy here, it was not in pursuance of any new authority. *Story on Agency, secs.* 253 to 260.

5th. That under the plaintiff's proof, the promissory notes

offered by him in evidence were those by which Wolf was indebted to him, and that the attachment proceedings are consequently defective from the neglect to produce the said notes at the time of making the affidavit for attachment.

6th. That the proof shows Wolf had returned to the city before the attachment was issued, and remained there for some time after, so that the attachment being against an absconding debtor, cannot be maintained.

7th. That under the plaintiff's proof it is established that his attachment was issued for $1030.88, when only $241.61 was due, and that the plaintiff, at the time of issuing the attachment, well knew the fact, so that said attachment was in fraud of the statute and cannot be maintained.  6 *G. & J.*, 347, *Bruce & Fisher, vs. Cook.*  10 *G. & J.*, 383, *Stone vs. Magruder & Brooke.*  3 *Gill*, 313, *Barr vs. Perry.*  2 *Pet.*, 536, *United States Bank vs. Owen.*  1 *Gill*, 381, *Boarman vs. Israel.*

*Wm. Geo. Read* and *Frederick W. Brune* for the appellees, contended upon the motion to dismiss, that the motion for a new trial, which was not only made, but persisted in to a hearing, and was overruled by the court, and which raised questions of law, which might have been embraced in instructions of the court, in the course of the trial, and thus have been made the subject of other exceptions, was a waiver and abandonment of the exceptions, and the appeal should therefore be dismissed.  2 *Wm. Bl. Rep.*, 929, *Fabrigas vs. Mostyn.* 18 *Eng. C. L. Rep.*, 333, *Doe vs. Roberts.*  1 *Eng. Law & Eq. Rep.*, 305, *Adams vs. Andrews.*  5 *Mason*, 173, *Cunningham vs. Bell.*  14 *Maine*, 421, *State vs. Call.*  32 *Do.*, 512, *Cole vs. Bruce.*  5 *English*, 483, *Berry vs. Singer.*  2 *Green*, 195, *Mann vs. Glover.*  5 *Cowen*, 415, *Corlies vs. Cummings.*  11 *G. & J.*, 389, *Mitchell vs. Mitchell.*

Upon the *first exception* they argued the following points:

1st. That the admission of the proof, connected with the notes objected to by the appellants, was for their benefit, inasmuch as it reduced the amount of the plaintiff's claim to

the sum shown by the smaller of these notes to be due at the date of the attachment.   12 *G. & J.*, 492, *Doyle vs. Com'rs of Balto. County.*   10 *Do.*, 442, *Farmers & Mechanics Bank vs. Planters Bank.*

2nd.  That the plaintiff's witness was authorized to refer to the smaller note, for the purpose of refreshing his memory as to the exact amount of the plaintiff's account due at the date of the attachment, and the record expressly states, that when said note was first produced, it was produced by the witness for the purpose of refreshing his memory, and said note being thus once properly introduced could not be objected to as inadmissible.   1 *Greenlf. on Ev.*, secs. 436, 439.

3rd.  That after the appellant's cross-examination of said witness, he was entitled upon his re-examination to produce the two notes of the defendant, just as well as his letter, (which was admitted without objection,) to show the sources of his knowledge in regard to the correctness of the plaintiff's account, and the amount due to him by the defendant at the date of the attachment.

4th.  That the letter produced by said witness, being in evidence without objection, and referring to the notes subsequently produced, these became necessarily legal evidence to explain said letter, even if otherwise they might have been objected to.

5th.  That said notes were legal evidence to show that the defendant was indebted to the amount of said notes, upon the account for goods sold, and the money counts.   15 *Eng. C. L. Rep.*, 147, *Maugham vs. Hubbard.*   2 *Greenlf. on Ev.*, sec. 112.   8 *East*, 284, *Kensington vs. Inglis.*   1 *Burr.*, 373, *Harris vs. Huntback.*   1 *Saund. on Pl. & Ev.*, 278.

6th.  That under this exception, which is confined to the admissibility in evidence of these notes, the appellants cannot now raise in the appellate court any objection that the attachment should have been upon the notes themselves, or that there was a variance between the claim under the attachment proceedings and the proof at the trial, even if such objections could have availed them in the court below.   8 *G.*

& *J.*, 248, *Steamboat Co. vs. Dandridge.* 1 *Gill*, 85, *Wolfe vs. Hauver. Ibid.*, 222, *Leopard vs. The Canal Co.*

7th. That there is no error in the attachment proceedings below patent upon the record, which may be taken advantage of in this court, by motion to quash or otherwise, although not raised in the court below.

8th. The sixth point of appellants is without foundation, for the attachment below was issued on the 21st of October, (Monday,) and the evidence shows that Wolf was absent from the city during the previous week, and only returned on Saturday morning early, that he did not go to his store on that day, and was not seen by Merritt from 7 o'clock, A. M., until 10 o'clock at night, and then by accident, and there is no proof that he remained in the city after that time, or was there on Monday, or that his presence on Saturday was known to the plaintiff.

9th. The seventh point of the defendants cannot be maintained, because the affidavit of the plaintiff was in fact correct, that the defendant was indebted to him in the sum mentioned in the affidavit, although the proof also shows that the whole amount of this debt was not payable at the date of the affidavit, and the fact that a part of the amount stated in the affidavit and account cannot be recovered under the attachment law, does not render the attachment invalid for the remainder. 12 *G. & J.*, 53, *Dawson vs. Brown.*

Upon the *second exception* they contended, that the question proposed to be asked was objectionable, because:—1st. It was a re-examination of the witness in regard to his authority to act for the defendant, when he had been examined in chief on this point, and there was no counter-testimony by the plaintiff in reference to it, to rebut which the proof might be adduced. 1 *Greenlf. on Ev.*, *sec.* 467. 2nd. It was a leading question. 1 *Greenlf. on Ev.*, *sec.* 434. 3rd. It was irrelevant testimony:—1st. Because it was evidence that the witness had authority to fill the defendant's stores by *buying* goods, when the question at issue was his authority to strip the defendant's store, by selling his goods and paying cash besides,

Lee and Brewster, Garn. of Wolf, *vs.* Tinges.

for an order for the paper of the defendant, not yet due. 2nd. Because it had reference to the authority of witness to supply defendant's stores in Washington and Virginia, while the question at issue is his right to act in relation to sales of goods in the store in Baltimore. 1 *Greenlf. on Ev.*, sec. 52. As to the authority of the clerk to make this sale, and to show that he had no such authority, see 14 *Penn. State Rep.*, 107, *Hampton vs. Matthews*, and 18 *Johns.*, 363, *Beals vs. Allen.*

Upon the *third exception* they contended, that the evidence was properly rejected:—1st. Because it was a re-examination-in-chief of the appellant's witness, and not for the purpose of rebutting testimony offered by the plaintiff. 6 *Eng. C. L. Rep.*; 119, *The Queen's case.* 34 *Do.*, 185, *Prince vs. Samo.* 2nd. That the ratification of a principal sustaining an unauthorized transaction of his clerk in favor of *one* of the creditors of the principal, is not evidence to show that a similar unauthorized transaction with *another* was authorized or ratified. 3rd. More especially when the proof of the ratification of such unauthorized act offered in evidence showed that it took place *after* the transaction, the authority of which is questioned. 4th. Still less is the evidence of subsequently ratified transactions proper to prove a general authority or ratification in regard to previous transactions, when the subsequent transaction relied upon took place *after the controversy began* in which they are proposed to be offered in evidence.

ECCLESTON, J., delivered the opinion of this court.

After verdict the appellants filed a motion for a new trial, stating they did so, without "waiving their exceptions." The court heard and considered the motion, but overruled it. The same day on which this decision was made, the appellants filed a motion in arrest of judgment, which, however, was subsequently withdrawn, without having been acted upon by the court.

The appellee insists, that this appeal should be dismissed, because the reasons assigned why a new trial should be granted involved questions of law, which were presented in the bills

of exceptions, or if not, which might have been presented in
them.  The principle contended for is, that *if* a party asks
for a new trial, relying upon matters of law, and after being
considered by the court the application is refused, although
he may not have been required to waive or abandon his excep-
tions, still he cannot have his case reviewed upon appeal;
because such an application for a new trial, will, of necessity,
be considered by the courts as a waiver of his bills of excep-
tions and right of appeal.

In 6 *How.*, 283, *United States vs. Hodge, et al.*, the
Supreme court say, "The motion for a new trial was not a
waiver of a writ of error.  In some of the circuits, there is
a rule of court to this effect.  But effect could be given to
that rule only by requiring a party to waive on the record a
writ of error, before his motion for a new trial is heard.  In
the greater part of the circuits no such rule exists.  It does
not appear to have been adopted in Louisiana."

In *Mitchell vs. Mitchell*, 11 *G. & J.*, 389, the county court
refused to entertain a motion for a new trial, unless the party
would abandon her exceptions, which being refused, the court
declined to entertain the motion.

After verdict in favor of the caveatees, in *Townsend vs.
Townsend*, 9 *Gill*, 517, the caveators moved the court to set
aside the verdict and grant a new trial.  Among the reasons
assigned, the 4th alleged error in the court, for excluding from
the jury proof of the declarations of Walter B. C. Worthing-
ton, one of the witnesses to the will.  The question as to the
admissibility of this proof, was presented by the caveators'
bill of exceptions.  The court overruled the motion.  When
the case was under argument upon the appeal of the cavea-
tors, the counsel for the appellees contended, "That the motion
for a new trial, and especially upon the ground covered by
the bill of exceptions, was a waiver of said bill of exceptions."
In the opinion of the court nothing is said on this subject:
but it is perfectly clear that they did not adopt the view of
the appellees; for if they had the appeal must have been dis-
missed.  Instead of which the decision below was reversed,

upon the question presented in the bill of exceptions. One of the judges dissented from the decision of a majority of the court, in regard to the admissibility of the evidence, which had been rejected below, but as he makes no allusion to the exception having been waived, by the motion, we consider him as concurring with the other judges, in the propriety of treating the appeal as legally before them.

The decisions on this matter of practice have not been entirely uniform: but the cases referred to we deem sufficient to warrant the conclusion, that in Maryland, when the same questions are presented in the bill of exceptions, and in the application for a new trial, the court below have the right, and in general ought, to require the party to waive his exceptions, before they will entertain the motion. If, however, the motion is heard and decided, but it does not appear that the party was required to make such waiver, the appellate tribunal will nevertheless, entertain the appeal. See 9 *Porter's Rep.*, *(Ala.,)* 110, *West vs. Cunningham.*

The motion to dismiss is overruled.

The two notes mentioned in the first exception, and offered in evidence by the plaintiff, were objected to by the garnishees, but the court refused to sustain the objection, and this refusal constitutes the first exception.

At the time of making the oath, for the purpose of obtaining the attachment, the plaintiff produced an account of sundry items of goods sold and delivered, as his claim, on which the alleged absconding debtor was indebted. The short note filed in the cause, is for goods sold and delivered; for money lent and advanced to, and paid, laid out and expended for the defendant; and for money had and received by the defendant for the use of the plaintiff. Although the witness Alnutt, in his examination-in-chief, stated the account was correct, yet, upon cross-examination, it appeared that he did not sell the goods, but as book-keeper he made out such account in his books from information derived from the other clerks. But upon further examination by the plaintiff, the witness "stated that he had been in the habit of obtaining from the

defendant his notes for previous purchases, and that he presented to him the account, as filed at different times, and soon after the dates set forth in the said account as of purchases, and that the defendant subsequently to such presentment, gave to witness the note following, which he also proved was signed by the defendant." The note here alluded to, is the one for $498.40, dated the 13th March 1850, and payable in six months: which the witness says was for a portion of the account. From the testimony of this witness, it also appears the note for $241.61, dated the 13th of September 1850, and payable in one month, was subsequently enclosed in a letter to the plaintiff from the defendant. In the letter, the defendant offers an apology for not being able to comply with his engagements, and asks, as an act of kindness, that the plaintiff will accept the enclosed note, for the balance due on former note. And the witness says, the note so enclosed was for the balance of the larger note of $498.40, then remaining unpaid.

The objection urged against the admissibility of these notes is, that an account was produced before the magistrate, as the claim on which the debtor was indebted, and the notes not having been produced at that time, they cannot now be used as evidence, in support of the plaintiff's claim; especially in the absence of other legal proof to establish the correctness of the account.

It is admitted by the counsel for the appellants, and properly so, that if A., sells goods to B., which are regularly charged to him in the ordinary course of business, and subsequently a promissory note is given by B., for the amount of the claim, after the note falls due, A., may maintain an action upon the account notwithstanding the note. And it is also conceded, that if A. has a claim for money had and received for his use, by B., who gives a note for the same, the note will be sufficient evidence to sustain an action by A., upon the common count, for money had and received. But it is said, although these principles apply to ordinary cases of actions in *assumpsit*, they are not applicable to attachments.

Lee and Brewster, Garn. of Wolf, vs. Tinges.

And many cases have been cited, for the purpose of showing how careful the courts have been to require a strict compliance with the provisions of our attachment laws: among them is that of *Dawson vs. Brown*, 12 *G. & J.*, 53. And it is supposed, this decision is quite sufficient to show that the notes objected to were improperly admitted in evidence. But we do not concur in this view of the matter. There the attachment was held to be erroneous, so far as related to the notes, because they were not produced with the affidavit. But it will be seen, that the objectionable items of the account consisted of the notes themselves, not charges for goods sold and delivered or for other matters, constituting an account, which, even if a note had been given for the same, would have been sufficient to support an action of *assumpsit*. In reference to what the statute requires to be produced at the time of making the affidavit, the court held that the creditor was not bound to produce before the justice, *all* the written evidence which he might have in his possession, and which might be used before the jury to establish the debt, and entitle him to a condemnation of the property attached. And among the examples intended to elucidate this proposition; and to show what kind of evidence need not be produced, the court gave the following: "So if an attachment be required on an open account, for goods sold and delivered, or money lent and advanced, and the creditor had this debtor's written orders for every item charged in the account, their production before the judge or magistrate is uncalled for by the act of Assembly. It requires not the production of the testimony, *qua* testimony, by which the creditor's claim is to be established, but the production of his cause of action, the account, bill, bond, note or instrument of writing, on which a declaration would be framed, as his cause of action, being in the language of the act of Assembly, 'that by which the said debtor is so indebted.' " If in the case put by the court, the account would be a sufficient cause of action, on which to have an attachment, and at the trial the written orders might be used as evidence to sustain the claim; why may not the account in this

case be sufficient to sustain the present attachment; and why may not the notes when taken in connection with the testimony of Alnutt and the letter of the defendant, be permitted to go to the jury as evidence, tending to prove an acknowledgment on the part of the defendant, of at least a portion of the account? It cannot be doubted that in an action of *assumpsit*, upon this account, the notes, under the circumstances disclosed in the record, would be proper for the consideration of the jury, as evidence of an acknowledgment by the defendant, that a portion of the account was correct. And if this were to be so in *assumpsit*, we see no good reason why it should not be so in the present instance. This, in our opinion, is clearly within the principle established in *Dawson vs. Brown.*

We do not understand the plaintiff as relying upon either note as his cause of action, or as evidence, *per se*, of the correctness of the account; but that they were offered in connection with the other proof as evidence of the defendant's acknowledgment, that a portion of the account was correctly due. At all events they were admissible in that view, and as the particular object for which they were offered is not stated in the bill of exceptions, we cannot reverse the decision which admitted the proof.

This decision is said to be erroneous for a further reason, which is thus stated : (being the 2nd point of the appellants:) "The said evidence was likewise inadmissible, being contrary to the account filed with the attachment. The proof establishes, that $241.61 was due on the 13th of September 1850, and continued due until the attachment issued, there being no evidence of any other indebtedness at or between those periods. The account shows the payment of $498.40, on October 5th, 1850, which was more than double the amount proven to be then due, and of course showed an extinguishment of indebtedness prior to suit brought." We do not see how we can sustain this point, even if the question presented by it is to be considered as properly before us. It is evidently a mere question of fact. It assumes, the proof estab-

lishes $241.61 to have been due on the 13th of September 1850, and continued due until the attachment issued, there being no evidence of any other indebtedness at or between those periods. And because the account shows the payment of $498.40 on 5th of October 1850, we are required to assume that this payment was an extinguishment of all indebtedness prior to suit brought. The language is, "showed an extinguishment of indebtedness prior to suit brought." Which of course, means *all* indebtedness; for otherwise it would avail nothing, in support of the position here relied upon.

There are several objections to the point. One is, that it is inconsistent in its different parts. For if it be true, "the proof establishes that $241.61 was due on the 13th of September 1850, and *continued due* until the attachment *issued;*" it will be difficult to perceive how it can be true that the payment of $498.40 on 5th of October, showed an extinguishment of all indebtedness prior to suit brought, which was on the 21st of the same month. Moreover, we are not prepared to say, that this payment left no part of the account due at the date of the attachment, when the witness, Alnutt, has sworn that the portion of the account then due was $241.61. And this we understand as having been sworn to by him, with a knowledge that the credit of $498.40 was upon the account. That he knew it, is at least a fair presumption, because he stated, "that the account annexed to the affidavit, warrant and attachment, was correct." In this reference to the testimony of Alnutt, we are not to be understood as considering him competent to speak of the correctness of the account, or of the amount due thereon, from any knowledge on the subject, which, as book-keeper, he derived from the other clerks. But we think his testimony in regard to the portion of the account due at the time of issuing the attachment, is entitled to consideration as evidence properly in the cause, under the circumstances stated by him, in reference to his habit of presenting to the defendant the account at different times, and obtaining from him his notes for previous purchases: the note for $498.40 being one of them; for the balance of which the note of $241.61 was given.

Nor can we see how it is possible from the facts to draw the inference, that $241.61 was the only indebtedness from the defendant to the plaintiff between the 13th of September and the 21st of October, or that no other portion of the account was due "at or between those periods." It is undoubtedly true, the defendant was in very embarrassed circumstances. The manner in which his mercantile affairs were brought to a close, in October, is clear proof of this. His letter, enclosing the note of the 13th of September, shows how much he was in want of funds to meet his engagements. For the moderate sum of $241.61, falling due three days after, he is under the necessity of asking, as a favor, that the plaintiff will accept his note, payable one month after.

It will be recollected, the appellants contend that the payment of $498.40, on the 5th of October, was an extinguishment of all indebtedness prior to the institution of the suit, because the evidence does not show any other indebtedness than the $241.61 between the 13th of September and 21st of October. To sustain the correctness of this position we must come to the conclusion, that notwithstanding the embarrassed condition of the debtor, notwithstanding he was compelled from want of funds to ask indulgence for a month on account of the balance due in a few days upon a note, nevertheless, before the expiration of that month, he paid not only that balance to the plaintiff, but double the amount for which he had any right to demand payment. And in addition to this, the only evidence of the payment of $498.40 is the credit of that sum on the account, whilst a credit of the 16th of September shows a payment of $258. Now if the appellants are right in insisting there was nothing due between the 13th of September and the institution of the suit, except the $241.61, then that sum was extinguished, indeed overpaid, by the payment of $258, and the necessary consequence is, that notwithstanding the serious embarrassments under which Wolf was laboring, he paid the $498.40 when not a cent thereof was due.

But supposing these objections to the second point of the appellants should be deemed insufficient, there is another, which, in our opinion, is conclusive.

In *Allender, et al., vs. Vestry of Trinity Church*, 3 *Gill*, 173, it is said: "If any principle, both at law and in equity, is conclusively settled, it is, that if a debtor defendant, seeking to discharge himself from a claim preferred against him, relies on the entries on the credit side of the account rendered or exhibited by his creditor, he thereby admits in evidence against him the entries on the debit side of the account. If then the appellees put their defence on the credits allowed them in account X, the debits of that account not being discredited or disproved by the testimony in the cause, establish the claim for which these proceedings were instituted." In the case before us, there is no testimony discrediting or disproving the correctness of the items charged in the account, or tending to show that the goods had not been sold and delivered. Nor is there any evidence of the payment of $498.40 on the 5th of October, except the credit of that sum on the account, the charges in which, after deducting the credits, leave a balance of $1030.88. The principle just stated will not permit the appellants to reject the charges and take the credit, for the purpose of applying that as an extinguishment of the sum which the witness, Alnutt, says was due when the attachment issued.

*Dawson vs. Brown* establishes the principle, that the plaintiff in attachment may recover a less sum than the amount sworn to by him before the justice.

The second bill of exceptions shows, that the garnishees had given evidence of a sale of the goods in controversy to William F. Lee, as their agent, by J. H. Merritt, as clerk and agent of Wolf. It therefore became a matter of some importance to them to show, that Merritt had authority to make the sale. He, as a witness for the appellants, stated, "that when said Wolf left the city, his instructions to the witness had always been, to go on with his (Wolf's,) business as if it were witness' own." It then appears, that "The garnishees, for the purpose of showing by particular facts the general scope of the authority under which said Merritt acted habitually on behalf of said Wolf, then asked him whether said Wolf was ever absent from the city? to which the witness replied, that he frequently was, having stores both in Washington and in parts

of Virginia, as well as in Baltimore." The garnishees then further asked, "whether he, the witness, was in the habit of acting by said Wolf's consent, and with his approbation, to every extent in reference to buying goods, or otherwise providing for Wolf's said stores during his absence?" The defendant objected to this question and the court sustained the objection, to which the appellants excepted.

The court, we think, were right, because the question is a leading one, according to the definition of a leading question in 1 *Greenlf. on Ev.*, sec. 434, where he describes it as embodying a material fact, and admitting of an answer by a simple negative or affirmative. The present inquiry did present a material fact, and might very well have been answered by the witness by simply saying, I was, or, I was not. And the course of the examination shows, very clearly, the witness could have no difficulty in knowing what answer he was desired to give. In 2 *Phillipp's Ev.*, 401, *(Ed. of* 1849,) it is said: "Leading questions, that is, such as instruct a witness how to answer on material points, are not allowed in the examination-in-chief." And in note 366, on page 769 of the 4th volume, this subject is treated of more at length, where cases are cited in which questions have been held improper, as being in conflict with this principle. It is there said to be a mistake "to suppose such only is a leading question to which *yes* or *no* would be a conclusive answer."

There are cases, even in a *direct examination*, where leading questions may be permitted; as, "where the witness appears to be hostile to the party producing him or in the interest of the other party, or unwilling to give evidence, or where an omission in his testimony is evidently caused by want of recollection, which a suggestion may assist." And in 1 *Greenlf. on Ev.*, sec. 435, other instances, in addition to these, are given, but in our opinion the principles involved in them do not sanction the propriety of the question before us.

From the third exception it appears, Wolf returned to Baltimore on the 19th of October, and had an interview with Merritt at his house, when Merritt stated to him the particulars of the settlement with Lee and Brewster, detailed in the testi-

Lee and Brewster, Garn. of Wolf, vs. Tinges.

mony of the witness, Lee; to which Wolf made no objection. And Merritt proved, that to the best of his recollection he then delivered to Wolf the receipt and order received from the witness, Lee, for the notes of Wolf held by Lee and Brewster.

For the purpose of showing a ratification by Wolf of the conduct of Merritt, and further illustrating the general scope of the authority under which Merritt habitually acted for Wolf, the garnishees proved by him, that after the period when the store in Baltimore was shut up and closed, the witness continued in Wolf's employment, at his request, and was sent to Virginia to his stores there. And then the garnishees " offered to prove that the witness, within the week following the transaction with Lee and Brewster, settled the claims of several other creditors of said Wolf in the same manner in which he had with said Lee and Brewster, and that said Wolf approved of and confirmed the same." To which the plaintiff objected as being evidence of matters subsequent to the attachment, and the court sustained the objection.

Merritt is represented as salesman and confidential clerk of Wolf, in his retail store in Baltimore. There can be do doubt that the principal may, if he pleases, confer on such a clerk full power to make a sale like the one in controversy. But in the ordinary and usual course of business, "a clerk in a retail store has no authority to sell by wholesale in payment of a debt due, and certainly not in payment of a debt not due." *Hampton, et al., vs. Matthews & Shaw*, 14 *Penn. State Rep.*, 108. In that case the court say: "It is obvious, that if a clerk has authority to apply any quantity of goods he may choose to the payment of a debt not due, he has power, in many cases, materially to injure, if not totally to destroy, his employer." See also *Beals vs. Allen*, 18 *Johns. Rep.*, 366.

To establish the right of Lee and Brewster to the property, either Merritt must have possessed authority to make the sale, or else it was necessary that it should have been ratified by Wolf before the attachment was levied.

The offered testimony being for the purpose of showing a ratification of the sale, and further illustrating the general scope of the authority under which Merritt habitually acted for Wolf,

was properly rejected by the court, because the sales to, or settlement of the claims of, other creditors occurred, not only after the attachment, but after the business affairs of Wolf had undergone a very material change from what they were when Merritt made the sale to Lee and Brewster. It would be a very unsafe rule to admit proof for the purpose of authorising a jury to infer the ratification of the act of an agent, or that he had authority to do the act, because subsequently thereto, under other and different circumstances, the agent did similar acts, which were approved of and confirmed by his principal. A man might be quite unwilling, under a given state of facts, to ratify a contract made by his agent, when, under a change of circumstances, he would be pleased to have the opportunity of confirming a similar contract.

Prior to the transaction with the agent of Lee and Brewster, no similar sale appears to have been made, but the business in the store up to that time had been going on as usual. It took two days to accomplish the sale, which was finished and the goods delivered on Thursday or Friday night. And on the following Saturday morning, (the 19th of October,) at 7 o'clock, Merritt informed Wolf of the sale. That transaction did not close the store, but it was opened for business as usual on Saturday morning. Afterwards, on the same day, it was closed by other parties under attachments, of which Wolf was informed that night, about 10 o'clock, by Merritt. Within the week following, the transactions between this clerk and other creditors took place, which were approved of by Wolf, and were offered in evidence but rejected.

There is a rule of evidence which excludes *collateral facts*, or such as do not afford a reasonable presumption or inference as to the principal fact or matter in dispute. And the reason of the rule, as given in 1 *Greenlf. on Ev.*, 70, *sec.* 52, is, "That such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and moreover, the adverse party having had no notice of such a course of evidence, is not prepared to rebut it." He gives several instances in exemplification of the rule, among which, one is, that "Where the question between landlord

and tenant was whether the rent was payable quarterly or half-yearly, evidence of the mode in which other tenants of the same landlord paid their rent was held inadmissible."

We do not, however, sustain the action of the court simply upon the ground, that the facts offered were collateral or because they were subsequent to the attachment, but because they took place, not in the ordinary course of business, but under circumstances very different from those existing at the time of the occurrence of the principal matter, and therefore they are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute.

We do not think the appellants are entitled to a reversal upon the ground taken in their sixth point.

*Judgment affirmed.*