Lewis S. Hough and Amelia M. Hough, his wife,
vs. George W. Kugler.

*Misjoinder of Parties—Attachment—Penalty.*

Where in certain articles of agreement entered into between H and wife
on the one part, and K on the other, the covenants of K were made
with the husband alone, the wife cannot properly be joined as a party
with her husband in an attachment against K, arising out of the
alleged breach of his covenants.

A claim arising out of the alleged breach of the covenants in certain
articles of agreement for the exchange of property, which contained
numerous and complicated terms and conditions, embracing many
things to be done and performed by the parties thereto, is not of that
fixed or definite character which may be recovered by attachment. It
is in its nature a claim for unliquidated damages, where the contract
furnishes no measure or standard for their computation, and the true
amount of which cannot be verified by affidavit.

By articles of agreement for the exchange of certain property between
the plaintiffs and the defendants, it was provided that "either party
failing to comply with the conditions of the contract should pay to the
other, as fixed or liquidated damages, the sum of five thousand dollars,
or more, if more damage should be proved." HELD :

That the sum of $5,000 was in the nature of a penalty, and could not be
recovered as liquidated damages by attachment.

APPEAL from the Circuit Court for Caroline County.

This was an attachment on warrant issued at the instance
of the appellants to recover the sum of $5,055.38, claimed to
be due to them from the appellee. The vouchers or evidence
of debt produced by the attaching creditors consisted of the
following articles of agreement, and an account purporting to
show the amount of money due :

This article of agreement, made this fifth day of October,
A. D., 1870, between George W. Kugler, of Goldsborough,
Caroline county, and State of Maryland, and Lewis S.
Hough and Amelia M. Hough, his wife, of Mantua, Glou-

cester county, and State of New Jersey, in relation to the exchange of properties : Witnesseth, that George W. Kugler covenants and agrees with the said Lewis S. Hough, for the consideration hereinafter named, that on or before the first day of January next, the said George W. Kugler will make true and valid deeds to the said Lewis S. Hough or Amelia M. Hough, his wife, to the following properties, situated near Goldsborough Station, Caroline county, State of Maryland, viz :

No. 1. The mill property, containing six acres of land, with the improvements thereon, valued at ($5,500) five thousand five hundred dollars.

No. 2. 147 acres of land, called or known as the "Wyatt Farm," with the improvements, valued at forty dollars per acre.

No. 3. Ninety-seven acres, known as the "Sylvester Farm," valued at thirty-five dollars per acre.

On the above properties there is a mortgage of two thousand dollars, which the said Lewis S. Hough assumes and agrees to pay, with interest, from the first of January next; provided that the said Kugler will procure from the holder of said mortgage, that he will give one year's time on the first thousand dollars, and two years on the second thousand dollars, by said Hough paying the interest promptly.

No. 4. Farm containing two hundred and three acres, as per record of deed, with the improvements thereon, adjoining the above properties, valued at twenty-five dollars per acre, subject to a widow's dower.

No. 5. Sixty-six acres of land, mostly woodland, with the improvements thereon, adjoining the lands of H. C. Culbreth, Geo. W. Kugler and others, valued at twenty dollars per acre.

The above described properties are subject to a judgment docketed against Thomas C. Wyatt and Geo. W. Kugler, as security, in the Circuit Court of Caroline county, in favor of the State of Maryland, for three thousand dollars; of which

sums the said Geo. W. Kugler agrees to pay five hundred dollars on or before the first day of January, A. D. 1871, with the back interest on the whole sum due the State of Maryland; for which sum of five hundred dollars, the said Geo. W. Kugler agrees to accept of the note of the said Lewis S. Hough, signed also by Amelia M. Hough, his wife; said note payable, with interest, eighteen months from the first of Jan. next. The balance due the State of Maryland at that time, will be from three hundred to five hundred dollars, as by arrangements made with the State authorities by the said Geo. W. Kugler; for this sum of from three hundred to five hundred dollars, G. W. Kugler agrees to take the note of the said Lewis S. Hough, payable at six months, at Easton Bank, and with the avails of said note, to pay the balance above named; provided, that the said Lewis S. Hough shall not otherwise be able to discharge said balance due the first of Jan. next. The remainder of said judgment the said Lewis S. Hough agrees to pay in two annual equal instalments, according to the arrangements already made by the said Kugler with the State authorities of Maryland.

No. 6. The said Geo. W. Kugler agrees to pay over to the said Lewis S. Hough, for his use and ownership, a Maryland and Delaware R. R. Bond, and first mortgage, per one thousand dollars, paying six per cent., payable semi-annually.

No. 7. Ten shares capital stock of Maryland and Delaware R. R.

No. 8. A first and only mortgage of twenty-eight hundred dollars, against 168 acres given by Isaac J. Reed and wife to Geo. W. Kugler; this to be transferred to Lewis S. Hough, or order, for his benefit and use or ownership.

For and in consideration of the above named properties, the said Lewis S. Hough and Amelia M. Hough, his wife, covenant and agree with the said Geo. W. Kugler, that on or before the first day of January, A. D. 1871, they will make true and valid deeds to Geo. W. Kugler, or his wife, to the following properties:

Hough and Wife *vs.* Kugler.

No. 1. The farm usually called the "Twitchell Farm," consisting of about one hundred and ninety-five acres, situated near the village of Mantua, county of Gloucester, State of New Jersey, with the improvements thereon, valued at twenty-seven thousand three hundred and forty dollars; said farm or farms is subject to nine thousand, six hundred and twenty-four dollars and sixty-seven cents, ($9,624.67,) which incumbrance the said Geo. W. Kugler assumes and agrees to pay, with interest from the first of January next. There is also on the part of the farm south of the Berkley road, a bond and mortgage of thirty-four hundred dollars, in favor of Lyman Tyler, which the said Lewis S. Hough and Amelia M. Hough, his wife, agree to pay, both principal and interest, on or before it becomes due, and to save and protect the said G. W. Kugler, his heirs or assigns, from all harm or detriment from the same.

Nos. 2, 3 and 4. The houses and lots, situated in the village of Mantua, and now occupied as tenant houses, and known as properties of the said Lewis S. Hough; on these three properties are incumbrances amounting to twelve hundred and seventy-five dollars; which incumbrances the said Geo. W. Kugler assumes and agrees to pay, with interest from the first of Jan. next; said properties valued at three thousand and fifty dollars; mutual possession to be given on or about the first of Jan. next; one-half of nursery peach trees reserved (those budded this fall) by Geo. W. Kugler.

No. 5. 39 shares of turnpike stock, Woodbury and Mullica Hill Co. Either party failing to comply with the conditions of this contract, shall pay to the other, as fixed or liquidated damages, the sum of five thousand dollars, or more, if more damage shall be proved.

GEO. W. KUGLER,   [Seal.]
LEWIS S. HOUGH,   [Seal.]
AMELIA M. HOUGH, [Seal.]

Signed and sealed in the presence of—

LYMAN TYLER,
MARY B. TYLER.

### ACCOUNT.

1871.      *George W. Kugler,*      DR.

Jan. 1st. To the Twitchell Farm, about 195 acres, near the village of Mantua, N. J.; that portion of this farm south of the Berkley Road having on it the Mansion House and other valuable improvements, was deeded to Maria J. Kugler, the wife of George W. Kugler, valued at................ $15,000 00
Less the incumbrances,    4,624 67
                 ———————— $10,375 33
                 $10,375 33

The other portion of said farm, lying north of the Berkley Road, with the improvements thereon, was deeded to George W. Kugler, and valued at...................... ......... $12,340 00
Less the incumbrances,    5,000 00
                 ————————   7,340 00
                 $7,340 00

To 3 houses and lots in the village of Mantua, valued at......... $3,050 00
Less the incumbrances,    1,275 00
                 ————————   1,775 00
                 $1,775 00

To 29 shares in the capital stock of the Woodbury and Mullica Hill Turnpike Co , at $25 per share.    $725 00      725 00

         Total Dr.............................. $20,215 33
         Total Cr.............................. $15,369 92

Balance due L. S. Hough and A. M., on the close of the 1st day of January, 1871..................................    4,845 41

Am't brought forward................ $4,845 41
Int. at 6 per cent. on same, to Sept. 20th
  1871...................................... 209 97

                                                 $5,055 38

Amount due L. S. Hough and A. M.
  Hough, on the 20th of September,
  1871........... ........................ $5,055 38


1871.          *George W. Kugler,*                    CR.

Jan. 1st. By mill property, contain-
        ing 6 acres, with improve-
        ments thereon...... ........ $5,500 00
By a farm of 147 acres,
        valued at $40 per acre.. $5,880 00
By a farm of 97 acres,
        valued at $35 per acre.. $3,395 00
By a farm of 66 acres,
        valued at $20 per acre.. $1,320 00

        Total.................. $16,095 00
      Less incumbrances on
        first 3 farms......... 5,000 00
                            —————— $11,095 00
              $11,095 00
By 1 Md. & Del. R R. bond,  $1,000 00     1,000 00
By 10 shares in the capital stock of the
  Md. & Del. R. R. Co., at $25 per
  share........................................ 250 00
By interest, money paid by Geo. W.
  Kugler..................... $218 67     218 67
By work done by Wm. Cox, in payment
  for quarter's rent on T. C. Wyatt, farm
  of Geo. W. Kugler....... $6 25      6 25

  Am't carried forward.................... $12,569 92

| | | |
|---|---:|---:|
| Am't brought forward................ $12,569 | | 92 |
| By money received as net. proceeds of | | |
| 8 caskets of peaches, from the above | | |
| farm............................40 cts. | | 40 |
| By 1 mortgage of $2,800.00, against 168 | | |
| acres of J. J. Reed......... $2,800 00 | 2,800 | 00 |
| Total.............. ................ $15,369 | | 92 |

The defendant moved to quash the attachment for the following reasons:

1. Because the attachment was not issued for a debt due from the defendant, within the meaning of the Act of Assembly regulating attachments.

2. Because the alleged claim is for unliquidated damages.

3. For defects appearing on the face of the proceedings.

The motion to quash was sustained by the Court, and the plaintiffs thereupon appealed.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER and ALVEY, J.

*Frank. H. Stockett*, for the appellants.

The account, exhibited with the written agreement of the parties, supplied proof of such an indebtedness from the defendant to the plaintiffs, as was within the remedy by process of attachment.

The amount claimed to be due was a debt arising *ex contractu, in writing*, so definite, clear and explicit in its terms, as to the liability of the defendant, as relieves this case from all objection that it was one for *unliquidated damages*. The liability was one of a *"fixed and liquidated"* amount, by the express words of the agreement, and so certain as to enable the plaintiffs, by affidavit, to aver it, and precluded the defendant from any escape from it before a jury, except by such proof as would defeat the recovery in any case of debt *ex*

*contractu.* *Wilson vs. Wilson,* 8 *Gill,* 193; *Warwick vs. Chase, Gar. of Le Breton & Co.,* 23 *Md.,* 155; *Goldsborough vs. Orr,* 8 *Wheat,* 217; *Dawson vs. Brown,* 12 *G. & J.,* 60; *Lee and Brewster vs. Tinges,* 7 *Md.,* 217.

*Alexander B. Hagner,* for the appellee.

The Court below was correct in quashing the attachment, and for the reasons set forth in the defendant's motion.

*First.* Whatever claim the appellants had against the appellee, was clearly in the nature of unliquidated damages, and the law is clearly settled that an attachment will not lie for a claim of that description. *Warwick vs. Chase,* 23 *Md.,* 155; *Mears vs. Adreon,* 31 *Md.,* 230.

*Second.* No "evidence of debt" within the meaning of section 4, of Article 10, of the Code of Public General laws, was filed by the attaching creditor.

The statement filed is the mearest conjectural claim of damages, unliquidated and obnoxious to the fullest extent to the objections heretofore sustained to such claims by this Court. *Mears vs. Adreon,* 31 *Md.,* 230; *Fisher vs. Consequa,* 2 *Wash. C. C.,* 386; *Clark's Ex'rs. vs. Wilson,* 3 *Wash. C. C.,* 562; *Burr vs. Todd,* 41 *Penn.,* 206.

*Third.* The writ of attachment contained no clause commanding the sheriff to make known to the person in whose hands the said *lands,* &c., might be, to appear, &c., as required by section 12, Article 10. *Everson vs. Selby,* 32 *Md.,* 340.

BARTOL, C. J., delivered the opinion of the Court.

The vouchers or evidence of debt produced by the attaching creditors in this case, consist of articles of agreement entered into between Hough and wife, of the one part, and Kugler, of the other part; and an account, purporting to show the amount of money due by the appellee to the appellants, under the contract, to be $5,055.38; the amount of alleged indebtedness stated in the affidavit.

The groundwork of the suit is the articles of agreement; and the first thing to be observed with respect to them, is that the covenants of the appellee are made with Lewis S. Hough alone, his wife, Amelia Hough, is therefore not a proper party, and is improperly joined as plaintiff in the suit.

But apart from this objection, the material question arises whether the vouchers, filed constitute an evidence of debt within the meaning of the Code, Article 10, section 4; that is, whether the claim exhibited is of such a nature as to entitle the appellants to maintain an attachment.

It is well settled that to entitle a party to remedy by attachment the *account and vouchers* produced, must be sufficient to show on their face a *prima facie* debt due by the defendant to the plaintiff. *Mears vs. Adreon, et al.*, 31 *Md.*, 229.

Secondly. The claim must arise *ex contractu*, and must not be in the nature of unliquidated damages, "but the measure of damages must be such as the plaintiff can aver by affidavit to be due." *Fisher vs. Consequa*, 2 *Wash. C. C. R.*, 382.

It was decided in *Wilson vs. Wilson*, 8 *Gill*, 192, and *Warwick vs. Chase*, 23 *Md.*, 155, "that unliquidated damages resulting from the violation of a contract, cannot be recovered by attachment, unless the contract affords a certain measure or standard for ascertaining the amount of damages." We refer also to *State, use of Bouldin, vs. Steibel*, 31 *Md.*, 37.

Tested by this rule, we are of opinion the claim in this case, arising out of the alleged breach by the appellee of the covenants in the articles of agreement, is not of that fixed or definite kind which may be recovered by attachment. It is in its nature a claim for unliquidated damages, where the contract furnishes no measure or standard for their computation, and the true amount of which cannot be verified by affidavit.

This is apparent from an examination of the terms and conditions of the agreement, which are numerous and complicated, embracing many things to be done and performed by the parties respectively, and the damages for the breach

of which are wholly unliquidated, and cannot be stated as a fixed, definite sum of money.

The agreement contains this provision: " Either party failing to comply with the conditions of this contract shall pay to the other, as fixed or liquidated damages, the sum of five thousand dollars, or more, if more damage shall be proved;" and it has been argued by the appellants that under this clause of the contract the appellants, in case of a breach by the appellee, are entitled to recover at least the sum of $5,000 as fixed and liquidated damages.

It was decided in *Dawson vs. Brown*, 12 *G. & J.*, 60, and *Lee vs. Tinges*, 7 *Md.*, 215, that a plaintiff in attachment may recover a less sum than that stated in the affidavit. But in this case the appellants have not proceeded for the recovery of the sum of $5,000 under this article of the agreement; and, in our opinion, even if they had attempted to do so, they could not maintain an attachment for that sum, because, though called liquidated damages, it is in its nature a penalty.

In support of this construction we refer to *Astley vs. Weldon*, 2 *Bos. & Pul.*, 346; *Kemble vs. Farren*, 6 *Bing.*, 141; and *Horner vs. Flintoff*, 9 *Mees. & W.*, 678. In the case last cited Baron PARKE said: " The rule laid down in *Kemble vs. Farren* was, that when an agreement contained several stipulations, of various degrees of importance and value, the sum agreed to be paid by way of damages for the breach of any of them, shall be construed as a penalty, and not as liquidated damages, even though the parties have in express terms stated the contrary. * * * * * When parties say that the same ascertained sum shall be paid for the breach of any article of the agreement, however minute and unimportant, they must be considered as not meaning exactly what they say, and a contrary intention may be collected from the other parts of the agreement."

This case, in our opinion, falls within the principle of *Kemble vs. Farren.* Some of the covenants on the part of the appellee are of certain and fixed value; and the rule

applies which is universally recognized, viz: "Whenever the sum stipulated is to be paid, on the non-payment of a less sum made payable by the same instrument, it will always be held a penalty." *Sedgwick on Damages*, 421 *m*, and cases there cited.

Being of opinion, for the reasons stated, that the claim of the appellants, as exhibited by the articles of agreement and the account, is not within the attachment laws, we affirm the judgment of the Circuit Court quashing the attachment.

*Judgment affirmed.*

(Decided 18th June, 1872.)