FREDERICK AND PHILIP THOMAS DAWSON *vs.* JOHN A. BROWN & Co., GARNISHEES OF PATRICK RYAN AND JOHN RYAN.—*December* 1841.

By the act of 1795, chap. 56, sec. 1, an attaching creditor, at the time of making the preliminary proof of his claim, in order to procure a warrant for an attachment, is required to produce "the bond or bonds, bill or bills, "protested bill or bills of exchange, promissory note or notes, or other in- "strument of writing, account or accounts by which the said debtor is so "indebted. *Held*—

It was not intended that the creditor should be bound to produce before the judge or justice, *all* the written evidence which may be in his possession, and which might be used before a jury to establish the debt, and entitle him to a condemnation of the property attached.

In an action against an endorser, it would be sufficient to produce the note endorsed by him.

So in an action upon an agreement containing dependent covenants, the pro- duction of the agreement would suffice.

So for the recovery of an open account, or for matters and things properly chargeable in account, though the creditor has written orders for each item, he need not produce them, nor more than his account, to the justice.

The act does not require the production of the testimony *qua* testimony, but of the cause of action. The account, bill, bond, &c., on which a declara- tion would be framed, and by which the debtor is so indebted.

The creditor in making his preliminary proof for the *notes* of his debtor, is bound to produce them ; but where his claim arises upon the draft of his debtor on him, paid, the drafts are but testimony and need not be produced at that time.

Where the affidavit and account filed by the creditor warrant an attachment for a sum of money, but not for the whole amount claimed, it is irregular in the justice to award the attachment for a greater sum than is properly established under the act of 1795 ; but it is not such an error, the case is not so entirely *coram non judice*, as to authorise the county court, upon the appearance of the garnishee, to quash the attachment.

APPEAL from *Baltimore* county court.

This was a proceeding in attachment commenced by the ap- pellants, on the 17th April, 1837, viz :

"*State of Maryland, Baltimore city, to wit:*

Be it remembered, that on the seventeenth day of April, in the year one thousand eight hundred and thirty-seven, before me the subscriber, a justice of the peace of the State of *Mary-*

*land*, in and for the said city, personally appeared *Philip Thomas Dawson*, a citizen of the State of *Maryland*, and made oath on the Holy Evangely of Almighty God, that *Patrick Ryan* and *John Ryan*, partners trading under the firm of *John Ryan & Son*, are justly and *bona fide* indebted unto him the said *Philip Thomas Dawson* and *Frederick Dawson*, partners trading under the firm of *William Dawson & Company*, in the sum of eleven thousand two hundred eighteen dollars twenty-five cents, over and above all discounts, and at the same time the said *Philip Thomas Dawson* produced to me the account on, and by which the said *Patrick Ryan* and *John Ryan* are so indebted, which is hereto annexed; and the said *Philip Thomas Dawson* did also make oath that he is credibly informed and verily believes, that the said *Patrick Ryan* and *John Ryan* are not, nor is either of them a citizen of the State of *Maryland*, and that they do not reside therein.

SAMUEL PICKERING."

DR. *Messrs. P. Ryan & Son, in account current, with interest account to 17th April, 1837, with William Dawson & Co.*

| 1837. | | | |
|---|---|---|---|
| January 14, To paid 1 per cent. additional commission for collecting *Neff & Brother's* note, due in *Cincinnati* 27th December, 1836, for $2,137 26, | 93 | 32 | $21 37 |
| — 30, To paid your note due 27th instant, - - - $508 20 / Postage and interest, 83 / Expense of protesting, 1 38 | 77 | 6 55 | 510 41 |
| February 6, To paid your draft favor E. D. Whitney & Co., date 4th inst. | 70 | 3 50 | 300 00 |
| — 20, To paid your draft E. D. Whitney & Co., date 18th inst. | 56 | 2 80 | 300 00 |
| — 28, To your note due 13th Feb. 1837, unpaid, - - - | 63 | 10 33 | 983 61 |
| March 3, To paid your draft at sight, date 1st inst. - - - - | 45 | 5 25 | 700 00 |
| — 6, To paid your two drafts at sight, date 3rd inst. $300 00 / " 4th inst. 800 00 | 42 | 7 70 | 1,100 00 |

Dawson *vs.* Brown.—1841.

| | | | |
|---|---|---|---|
| — 20, To paid your draft at sight, date 18th inst. favor *E. P. Whitney & Co.*, - - - - - | 28 | 2 33 | 500 00 |
| — 24, To do. do. date 22nd inst. | 24 | 2 80 | 700 00 |
| — 31, To do. do. " 29th " | 17 | 1 98 | 700 00 |
| — 31, To paid your note due 14th inst., unpaid, - - - - | 34 | 4 61 | 813 08 |
| — 31, To do. do. 10th inst. | 38 | 3 72 | 587 52 |
| — " To do. do. 23rd " | 25 | 2 45 | 588 85 |
| — " To ¾ per ct. additional commission for collecting *N. Sampson's* note, due in *Cincinnati* 12th inst. for $1,069 83, - - - | | | 8 02 |
| — 31, To paid ¾ per ct. do. do. colclecting *Neff & Brother's* note due in *Cincinnati* 27th instant, $2,137 25, - - - - | 17 | 07 | 16 03 |
| April 5, To paid your draft favor *E. D. Whitney & Co.*, at sight, - | 12 | 1 00 | 500 00 |
| — 7, To paid your draft, date April 5th, at sight, to your order, - | 10 | 67 | 400 00 |
| — 5, To your note due this day, unpaid, - - - - | 12 | 1 10 | 549 59 |
| — 5, To do. do. do. | 12 | 1 10 | 549 06 |
| — 14, To paid *R. B. Hancorck's* draft at sight, favor *E. D. Whitney & Co.*, date 12th inst. - - | 3 | 26 | 530 00 |
| — 14, To paid expenses protesting your note, due 5th April, 1837, | | | 2 13 |
| — 15, To your note due this day, unpaid, - - - - | 2 | 30 | 910 62 |
| — 17, To postages, - - | | | 2 50 |
| — " To balance of interest to date of account, - - - - | | | 56 14 |
| | | | $11,919 63 |

CR.

1837.

| | | | |
|---|---|---|---|
| March 8, By your acceptance, due 19th March, 1837, - - - | 29 | 3 39 | 701 38 |
| April 17, By balance carried down, due 17th April, 1837, - - | | | 11,218 25 |
| | | | $11,919 63 |

April 17, To Balance due this day, $11,218 25

*Baltimore, 17th April*, 1837. E. & O. E.

"*To the clerk of Baltimore county court :*

*Mr. Kell,*—You are hereby required, on receipt of this warrant, and the above oath and annexed vouchers on which the same is granted, to issue an attachment against the lands, tenements, goods, chattels and credits of the said *Patrick Ryan* and *John Ryan,* to answer unto the said *Frederick Dawson* and *Philip Thomas Dawson,* the above mentioned sum of eleven thousand two hundred eighteen dollars twenty-five cents, current money, and cost of this attachment, according to the acts of Assembly in such case made and provided, and this warrant shall be your sufficient authority therefor.   Given under my hand and seal, this seventeenth day of April, in the year eighteen hundred and thirty-seven.

SAMUEL PICKERING,   (Seal.)

*A Justice of the Peace for the city of Baltimore.*"

And thereupon, by virtue of the said warrant, and in pursuance of the act of Assembly aforesaid, the said *Frederick Dawson* and *Philip Thomas Dawson,* by *John Glenn,* esquire, their attorney, prosecuted and sued forth out of the county court here, the writ of the State of *Maryland,* of attachment, in form following, to wit :

"*The State of Maryland to the Sheriff of Baltimore county, greeting :*

Whereas, *Samuel Pickering,* esquire, one of the justices of the peace for Baltimore city, hath this day issued his warrant to the clerk of said county, directing him to issue attachment against the lands, tenements, goods, chattels and credits of *Patrick Ryan* and *John Ryan,* to answer unto *Frederick Dawson* and *Philip Thomas Dawson,* the sum of eleven thousand two hundred eighteen dollars twenty-five cents : We therefore command you, that you attach the lands, tenements, goods, chattels and credits of the said *Patrick Ryan* and *John Ryan,* to the value of eleven thousand two hundred eighteen dollars twenty-five cents, current money, and cost of this attachment, according to the form of the act of Assembly in such cases made and provided.   And we do further command you, that by good and lawful men of your bailiwick, you make

known unto the person or persons in whose hands you shall make this attachment, that he, she or they be and appear before the judges of *Baltimore* county court, at the court house in the same county, on the first day in May next, to shew cause (if any he, she or they have,) why the lands, tenements, goods, chattels and credits by you attached by virtue of this writ, in his, her or their hands, shall not be condemned, and execution thereof had and made to and for the use of the said *Frederick Dawson* and *Philip Thomas Dawson,* as of the lands, tenements, goods, chattels and credits of the said *Patrick Ryan* and *John Ryan,* according to the act of Assembly in such cases made and provided, if to him, her or them it shall seem meet, and how you shall execute this writ, make known to our said judges, at the day and place aforesaid, and have you then and there this writ. Witness the honorable STEVENSON ARCHER, chief judge of our said court, the second day of January, in the year eighteen hundred and thirty-seven.

Issued the 17th day of April, 1837.

THOMAS KELL, *Clerk.*"

And the said *Frederick Dawson* and *Philip Thomas Dawson,* by their attorney aforesaid, at the time of suing forth the aforegoing writ of attachment, prosecuted and sued forth out of the county court here, the writ of the State of *Maryland,* of *capias ad respondendum,* against the said *Patrick* and *John Ryan;* and also filed in said cause the following short note, to wit:

"*Frederick Dawson and Philip Thomas Dawson* against *Patrick Ryan and John Ryan*—*Action of assumpsit in Baltimore county court.*—This suit is instituted to recover the sum of eleven thousand two hundred eighteen dollars twenty-five cents, due and owing from the defendants to the plaintiffs, for money lent and advanced by the plaintiffs to the defendants, and at their instance and request, and for money had and received by the defendants to and for the use of the plaintiffs.

J. GLENN, *for Plaintiffs.*"

A copy of which said short note was made and sent with the writs aforesaid, to the sheriff of the county aforesaid, there-

on endorsed, "To be set up at the court house door;" and the sheriff returned the same.

Laid in the hands of *George Brown*, one of the firm of *John A. Brown & Co.*, and laid in the hands of *John A. Brown & Co.* the 17th of April, 1837, in presence of *Robert Wilson* and *Samuel Hiser.* "*Non sunt P.* and *J. R.* copy set up, *John W. Walker*, sheriff."

The garnishees appeared and pleaded *non assumpsit* and *nulla bona*, on which pleas issues were joined, and afterwards they moved the court to quash the attachment for the following reasons:

1. Because the claim on which the attachment in this case was ordered, consisted of certain promissory notes of the absent defendants, and also of certain drafts drawn by said defendants; and the said notes and drafts do not appear to have been produced to the justice ordering the attachment, nor were they lodged with the clerk issuing it.

2. Because the claims on which the attachment in this case was ordered and issued, consisted in part, of certain promissory notes of the absent defendants, due to the plaintiffs in attachment, and the said notes were not produced to the justice ordering the attachment, nor were they lodged with the clerk issuing it.

3. Because the justice upon the claim as exhibited, had no authority to order, nor had the clerk authority to issue the attachment in this case.

The county court quashed the attachment, and the plaintiffs below appealed to this court.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY, CHAMBERS, and SPENCE, J.

By CAMPBELL and RICHARDSON for the appellants, and

By BROWN and McMAHON for the appellees.

DORSEY, J., delivered the opinion of this court.

To sustain the judgment of the county court, quashing the writ of attachment issued in this case, a number of the deci-

sions of the courts in *Maryland* have been referred to, in all of which it is apparent, that the requisitions of the acts of Assembly in relation to attachments had not been complied with, and that the judge or justice before whom the proceedings were had, possessed no power to order any writ of attachment to issue thereon. And such, it is alleged, was the condition of the justice who directed the issuing of the writ before us. The objection taken to the proceedings before the justice, is the omission of the appellants to exhibit before him the notes and *drafts* referred to in their account. Whether this objection be well founded or not, depends upon the true construction of that part of the *first* section of the act of 1795, chap. 56, which requires the creditor, at the time of making his affidavit as therein directed, to produce " the bond or bonds, bill " or bills, protested bill or bills of exchange, promissory note " or notes, or other instrument or instruments of writing, ac- " count or accounts, by which the said debtor is so indebted." We do not give to this requisition of the act of Assembly that interpretation which the argument of the appellees would impose on it, *to wit*, that the creditor is bound to produce before the judge or justice, *all* the written evidence which may be in his possession, and which might be used before a jury to establish the debt, and entitle him to a condemnation of the property attached; *as for example*, if the attachment, applied for, were against the endorser of a promissory note, and the creditor, the endorsee, were possessed of the written acknowledgment of the endorser, that the endorsement was in his hand writing, that the demand for payment had been duly made, and he notified of non-payment within the time prescribed by law, it would not be necessary to produce such acknowledgment before the judge or justice awarding the attachment; the production of the endorsed promissory note would be all that would be required; and if in the case of an agreement containing dependent covenants, as if A covenants to pay B a sum of money upon B's delivering to A, of certain specified articles, and B delivers the articles to A and takes his receipt therefor, upon an attachment against A, the receipt need not be pro-

duced; the exhibition of the agreement itself being a sufficient compliance with the requisition of the act of Assembly. So if an attachment be required on an open account, for goods sold and delivered, money had and received, paid, laid out and expended, or money lent and advanced, and the creditor had the debtor's written orders for every item charged in the account, their production before the judge or magistrate is uncalled for by the act of Assembly. It requires not the production of the testimony, *qua* testimony, by which the creditor's claim is to be established, but the production of his cause of action, the account, bill, bond, note or instrument of writing, on which a declaration would be framed, as his cause of action, being in the language of the act of Assembly, "that by which "the said debtor is so indebted." Apply this doctrine to the case before us, and it deprives the magistrate of all power to have issued his warrant for an attachment for that part of the account which relates to the notes not *produced* before him; not so, however, as to the drafts. They form not the creditor's cause of action, and could not be declared on as such. They are but testimony, by which, in connexion with other proofs, certain items in the account may be established. For all that part of the account, therefore, not founded on the notes, the proof is sufficient to have warranted the justice in awarding an attachment. Does the issuing of an attachment for a larger sum than the creditor by his cause of action has shown to be due, nullify the whole proceeding? is the question we are called on to decide. The authorities referred to have no bearing upon this question. In all of them it was manifest, that by reason of a non-compliance with the requisitions of the act of Assembly, the judge or justice had no authority for issuing an attachment for any amount, and therefore the writs of attachment were quashed, as being *coram non judice.* In the case at bar, we think the magistrate had power to have ordered an attachment; there is error for all that portion of the appellant's claim, dependent on the notes referred to in his account. There is error then in nothing but in the amount for which it issued. By quashing the writ in such a case,

much greater injustice would be inflicted on the creditor, than sustaining the writ would visit upon the debtor. The process is issued but to compel the debtor to appear to the suit instituted against him; and if injured or oppressed by an excessive seizure and detention of his property, his means of relief are immediate, and entirely within his own control. There is no danger therefore of any serious evil resulting from sustaining the writ of attachment in such a case. With as much justice and propriety might it be urged, that if on a trial with the garnishee, the plaintiff fails to recover the entire amount by him sworn to before the justice, he shall recover nothing, and the writ of attachment shall be quashed; or that if a bail piece be taken on the plaintiff's oath, as to the amount of his debt, for a larger amount than shall be recovered on the trial, that an *exoneretur* shall be entered thereon. We are aware of no principle or analogy of the law, which requires the quashing of the writ of attachment issued in this case for the cause assigned.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**

BUCHANAN, C. J., and SPENCE, J., dissented.

BUCHANAN, C. J., delivered the following opinion:

I concur in the opinion of a majority of the court, delivered by my brother DORSEY, that where a creditor who has a claim against an absent or absconding debtor, due on bond or note, or other instrument of writing, which he seeks to enforce by the process of attachment, he must at the time of making his application for the attachment, produce before the justice, &c., to whom the application is made, the bond or note or other instrument of writing by which the debtor is indebted, and that the production of an account merely, charging such bond or note, &c., is not sufficient. I agree too, that where the claim arises upon an account, the production of such account as that by which the alleged absconding debtor is indebted, is sufficient, without any voucher or proof to warrant an attachment for the amount charged and sworn to, the other requisites of

the law being complied with.    But I cannot yield my assent
to so much of his opinion as sustains this attachment.    The
power given by the act of 1795, chap. 56, to a justice of the
peace, &c., to award attachments, is a specially delegated au-
thority, which this court has decided in *Shivers* and *Wilson,*
5 *Har. & John.    Barney* and *Patterson,* 7 *Har. & John.,* and
some subsequent cases, must be strictly pursued.    That act
requires that a creditor who is desirous of suing out the pro-
cess of attachment against an absent or absconding debtor,
shall make oath before a justice of the peace, &c., that such
debtor is *bona-fide* indebted to him or her, in a sum to be
stated in the oath, over and above all discounts, and at the
same time produce the "bond or bonds, bill or bills, protested
" bill or bills of exchange, promissory note or notes, or other
" instrument or instruments of writing, account or accounts by
" which the debtor is *so* indebted," upon his doing which,
that is making the oath, and producing the bond or bonds, &c.,
account or accounts by which the debtor is *so indebted,* the
justice, &c., is authorised to issue his warrant to clerk to issue
an attachment, but not otherwise.

Now, what is meant by the words "by which the debtor is
*so indebted?*"    Why, they refer the words "*by which*" to the
bond or bonds, &c., account or accounts; and the words "*is
so indebted,*" to the oath, and mean (as it seems to me,) in-
debted to the amount as stated and sworn to.    "*By which said
debtor is so indebted,*" can, I think, only mean by which he is
indebted to the amount stated in the oath, and if that be so,
(of which I cannot doubt,) as it is only upon the making the
oath, to the amount claimed to be due (which amount is re-
quired to be set out in the oath,) and at the same time produc-
ing the bond, &c., account or accounts by which the absent or
absconding debtor is *so indebted,* that the justice, &c., is au-
thorised to award an attachment.    It would seem to follow,
not by reasoning from analogy, (which is not always the safest
way of coming at a correct conclusion, and need not be re-
sorted to in this case,) but from the language and meaning of
the law itself, that the justice, &c., whose power in that re-

spect is special and limited and must be strictly pursued, can have no authority to direct an attachment to be issued unless those prerequisites are complied with; that is, unless in addition to the oath, stating the indebtedness and at the same time producing the bond or bonds, &c., account or accounts, or both, as the case may be, by which the debtor is indebted in the sum sworn to, and for which the attachment is sought to be obtained; and that done, the warrant for the attachment goes to the clerk for the sum stated in the oath to be due. He cannot award an attachment without a previous oath, stating the sum in which the debtor is indebted. Now, if such oath be made, unless the vouchers *by which* he is *so* indebted shall at the same time be produced, the oath without the vouchers can give no authority; nor the vouchers without the oath. Neither can be dispensed with. The two must unite. In this case the plaintiff made oath before a justice of the peace, that the debtor was indebted to him in the sum of $11,218.25, and produced an account for that amount, made up, among other things, of charges to a large amount for notes due and unpaid. The production of that account, so far as concerns the other items charged, was sufficient, being that by which the alleged debtor was indebted for so much of the sum sworn to. But not covering the whole amount, and the act requiring the bond or bonds, note or notes, &c., account or accounts *by which* the debtor is indebted, *in the sum mentioned in the oath*, to be produced; and the notes charged in the account, by which he is indebted to a large amount of the sum sworn to, not having been produced, that requirement of the act was not complied with as far as respects the notes charged, and without the production of the notes, by which he in part was so indebted, the justice of the peace, I think, was not justified in awarding an attachment for the whole amount of the sum sworn to, in a part of which only the debtor is indebted by the account produced. His authority only being to direct the issuing an attachment for the sum mentioned in the oath of a creditor, in the production of the voucher or vouchers, as the case may be, by which the debtor is *so indebted;* and there is no hardship

in that, as it would be as easy to produce the vouchers them-
selves as an account charging them.

There was no authority for awarding an attachment for so
much of the sum stated in the oath as was charged in the ac-
count to be due on notes that were not produced; and the
attachment being for the whole sum, for a part of which the
justice was not authorised to award it, it was improvidently
issued; and being an entire thing, illegally directed and issued,
and not warranted by the act of Assembly, it cannot in my
opinion be split up, and sustained in relation to any part of
the amount for which it was issued, and the court below, I
think, did right in adjudging it to be quashed.

The inquiry is, was it properly issuable; was it authorised
by the act of Assembly, and if not, can it now be awarded or
deemed good for any purpose? I think not, stamped as it is
with the want of authority in the justice to issue it.

NOTE BY REPORTERS. Since the case of *Baldwin vs. Neal and Ridgeway*,
10 *Gill & John.* 274, originated, the act of 1834, chap. 79, was passed; the
first section of that act dispenses with the averment, for the want of which
that cause was decided; and which averment is not contained in the affidavit
in this case, it being no longer necessary to do more than prove residence in
the United States, &c., of some one of the plaintiffs at the trial, where such
averment is not made in the affidavit to procure the attachment. The 3rd sec.
of the act of 1834, chap. 79, is however repealed by the act of 1842, chap. 107.