(Decided July 15th, 1859.)

# Andrew B. Cross *vs.* Jacob Tome.

The rent of a quarry at a certain number of cents per perch, (the amount varying with the quality,) of each and every perch of stone quarried, is a *certain money rent* within the meaning of the Act of 1834, ch. 192.

An account against the tenant as follows: "To balance of quarry rent, *due* Dec. 31st, 1855, on the quarry at Rock Run, Cecil county,—$591," sufficiently states the *time when the rent became due.*

The account of the landlord, required by the Act of 1834, ch. 192, must state *when* the rent therein claimed *became due.*

But it is not necessary to state in the account the *terms of renting,* nor to set down the *items* showing the *whole amount* originally payable under the contract, and the *credits* thereon.

The Act requires the account "to state, in dollars and cents, the amount of rent claimed to be due and in arrear," and this is complied with by stating so much as a *balance* of rent due and in arrear.

The affidavit prescribed by this Act need not be *literally* pursued, but it is sufficient if it be substantially followed.

The words in the affidavit prescribed, "except the credits, if any, which have been given," apply to a case where credits have been stated in the account, which may be done, but they do not make it *necessary* to state debits and credits.

Cross *vs.* Tome.

This Act does not require that the account should state the *time during which the rent accrued,* and it is no objection to an account that it omits to do so.

This Act is not to be construed by the principles applicable to the construction of statutes conferring special remedies in contravention of the common law, but is to receive a sensible construction, looking to the object and design of the Legislature.

The object and design of this Act were to protect the tenant from onerous and oppressive proceedings by the landlord, and to prevent the levying of excessive distress, by requiring the sum claimed, as actually due and in arrear, to be clearly stated and verified by oath.

APPEAL from the Circuit Court for Cecil County.

*Replevin,* brought on the 5th of July 1855, by the appellee against the appellant, for "five horses, five horse-carts, two sets of single harness, one stone wagon, three cranes, one lot of quarry tools, and one lot of quarry fixtures."

The defendant *avowed* the taking under a distress for rent. The avowry alleges that James Whitelock, for one year next before and ending on the 31st of December 1854, was tenant of the place called "The Quarry," under a demise thereof by the defendant to him, "at and under a certain yearly rent as follows, that is to say, of ten cents per perch for every perch of small building stone which should be taken from said quarry, of fifteen cents per perch for every perch of large building stone which should be taken from said quarry, and of seventy-five cents per perch for every perch of faced stone which should be taken from said quarry," and that Whitelock, during said year, took from said quarry 7400 perches of small building stone, 2000 perches of large building stone, and 900 perches of faced stone, amounting in the whole to $1640, of which $591, part of the rent aforesaid, for said year, was due and in arrear, and for which the goods and chattels in question were taken under a distress.

The plaintiff pleaded, 1st, *non demisit;* 2nd, that Whitelock did not possess and enjoy the place under the demise; 3rd, that the avowant did not take the goods and chattels as a distress for rent, as alleged in his avowry; 4th, that the avowant took them in his own wrong; and 5th, that part of said goods and chattels were tools and implements of trade in actual use at the time of the taking, and the residue were cattle of the

Cross *vs.* Tome.

plaintiff, which, at the time of the taking, went upon the premises, then and there being unenclosed by sufficient fences, without the knowledge or consent of the plaintiff. Issues were joined on these pleas.

*Exception.* The avowant offered evidence to prove the tenancy as alleged in the avowry, and that the whole amount of the rent, for the year 1854, was $719.20, of which the tenant had paid $128.20, leaving a balance of $591, which the tenant, before the distress was levied, had admitted. He then offered to prove by the bailiff, who was authorised to levy the distress, that the distress was laid, and, as a part of the proceedings, offered an account and affidavit, which he proposed to show, by the bailiff, was the account on which he proceeded. The account is stated in the opinion of this court. The affidavit and the warrant are as follows:

"CECIL COUNTY, TO WIT:—*Be it remembered,* that on the 26th day of June 1855, before me, the subscriber, a justice of the peace of the State of Maryland, in and for the said county, personally appeared Andrew B. Cross, and made oath on the Holy Evangely of Almighty God, that James Whitelock, his tenant, is justly and *bona fide* indebted to him in the sum of $591, for rent in arrear and already due to him, and that he hath not received, either directly or indirectly, any part or parcel of the said rent claimed to be due and in arrear, or any security or satisfaction for the same, to the best of his knowledge and belief.      Sworn before    SAMUEL PEACO."

"CECIL COUNTY, *June 26th,* 1855.

*To Wm. Dennison, my Bailiff, Greeting:*—Distrain the goods and chattels of James Whitelock, in the quarry occupied by him, and rented of me, which lies on the east side of the Susquehanna river, for $591, being balance of quarry rent due to me, on the 31st of December 1854, and for so doing this shall be your sufficient warrant and authority.

ANDREW B. CROSS."

To the production of these papers as proof to the jury, the plaintiff objected, on the ground that the paper professing to be the account was not such as was required by the terms of the Act of 1834, ch. 192, which objection the court (PRICE, J.)

32    v. 14.

sustained, and refused to allow the account to be used as evi-
dence, on the ground that it did not sufficiently state particu-
lars, but only a balance of rent.　To this ruling the avowant
excepted, and the verdict and judgment being in favor of the
plaintiff, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON
and BARTOL, J.

*A. Randall* and *A. B. Hagner* for the appellant :

The objection sustained by the court below was, that the ac-
count was not such as was required by the Act of 1834, ch.
192.　The first section of this Act prescribes the form of the
affidavit to be made by the landlord before making the distress,
1st, where the distress is for a certain money rent, and, 2nd,
where the rent is payable in produce.　The affidavit in this
case is *identical* in language with that prescribed by the Act
in the case of a *money rent,* and the account exactly follows
the 3rd sec. of the Act in the case of a money rent.　They
both specify, "in dollars and cents, the amount of rent claimed
to be due and in arrear."　The 3rd sec. does not require that
the whole year's rent should be first stated in the account and
then the credits given, but the account is to state in "dollars
and cents, the *amount of rent claimed to be due and in ar-
rears.*"　The account, therefore, "states particulars" as fully
as the Act requires it should, even if it be only "a balance of
rents."　In the same manner, by sec. 1st, the landlord must
limit his affidavit strictly to the specified amount "which he
shall claim to be due," thus intimating the propriety of making
mention of no other sum except the particular amount "claimed
to be due and in arrear."　If, therefore, this is to be regarded
as a *money rent,* there seems to be no objection whatever to
the account.　That it is to be so regarded seems clear.　By
its express terms it is payable in *money,* not in any manner of
*produce.*　The character of *the rent payable in kind,* as men-
tioned in the Acts of Assembly, is clearly explained by the
language of the Acts of 1831, ch. 171, and 1834, ch. 192.
The first was intended to apply the right of distress to cases

Cross *vs*. Tome.

"where land shall be rented in consideration of a render of *a portion of the crops raised upon the same,* or for *a specific amount of grain or other produce.*" By the 2nd sec., the *specific amount or quantity of grain or other produce, or proportion of the crops agreed upon as rent,* is to be *valued,* &c. The Act of 1834 speaks in the same way of "*the quantity or proportion of produce* claimed by the landlord," &c., both laws evidently referring to a renting where the landlord was not to be paid in *money* but in some product from the land. In the present case, by the express terms of the renting, *money* and nothing else was to be paid by the tenant. If, therefore, this rent was of either of the descriptions of rent specified in the Act of 1834, it must certainly be considered as a *money rent,* and if it be a money rent the account and affidavit are fully sufficient. The law says there shall be annexed to the warrant "the *account* of the landlord." An account is defined to mean "the state or result of a computation." The word means nothing more in this case than in ordinary cases where accounts are produced. Certainly it would be no objection to an account in an action for the recovery of a debt before a magistrate, that it only states the *balance* due. The plaintiff must afterwards fully prove the particulars of his account with all the debits. The words of the Act are, therefore, gratified in this case, for this certainly is *an account.* The Act proceeds to describe what the account must contain ; it shall state in dollars and cents, "the amount of rent *claimed to be due* and *in arrear*"—not the *items* nor the amount which *would have been* due if payments had not been made, but the amount *then* claimed to be due. This account is fully in conformity with these requirements of the law. The levying of a distress by a landlord for rent in arrear is not "a summary proceeding authorized by law," as is argued by the other side, but is a right as old as the common law, and all statutes abridging it are to be construed with great strictness. Before the Act of 1834, no account was necessary. That Act requires an account to be annexed to the warrant, and prescribes what it shall contain, and nothing which is not demanded by the Act need be inserted. The Act says nothing of the neces-

Cross *vs.* Tome.

sity of setting forth the *items,* the *time* from which the renting dates, or any other particulars of the renting. How can their absence invalidate an account which contains everything the Act demands? Even if the landlord claimed too much rent as due, he would be compelled to reduce it at the trial of the replevin. If the distress is illegal, an action of replevin easily brings the illegality to light, and the claim of the landlord must be verified by proof. But if he really has a claim, then he is entitled to have it discharged in preference to all other creditors. This landlord framed his account for rent due precisely in conformity with the words of the law, and if it were now to be held insufficient, he will have been entrapped by the very words of the law into the loss of his rent. Nor does the Act require "that credits if any should be stated *in the account.*" It only requires a statement of "the amount claimed to be due," and that he shall make affidavit of "the *amount* of his, or her, or their rent, *claimed to be due.*" In fact, the whole law seems to exclude the idea that all the dealings between the parties are to be set forth in the account. It wisely left the question as to how *much* was really due, for the final determination of a jury at the trial of an action of replevin, in which the tenant might dispute the landlord's statement.

*Note.* The learned counsel also argued, 1st, that if this rent should be viewed as one payable in produce, still the account should have been admitted in evidence. 2nd, that even if this court should decide these papers to be technically incorrect, the ruling below should still be reversed, upon the ground that any defect in the account and affidavit had been waived by the tenant, and, 3d, that this is neither of the rents mentioned in the Act of 1834, but a third description of rent, viz., a money rent not actually *certain* but *capable of being made certain,* and, therefore, not comprehended by this Act. The argument on these points is omitted.

*Jno. J. Cresswell* and *Henry W. Archer* for the appellee :

The cases of *Joynes vs. Wartman,* 5 *Md. Rep.,* 195, and *Giles vs. Ebsworth,* 10 *Md. Rep.,* 333, decide that the suffi-

ciency of the landlord's account in the distress proceedings may be inquired into in actions of replevin, and we contend that this account is defective:

1st. Because it does not state the whole rent due for a certain time, nor the credits to which the tenant was entitled.

2nd. Because the account does not state the time for or during which the rent accrued.

1st. Whenever a landlord resorts to this summary proceeding for the collection of his rent, he must be held to a strict compliance with the requirements of the law by which he is authorized to levy for a mere claim not yet ascertained by any judicial proceeding; and where the levy is made upon the property of a third person who is not his debtor, even-handed justice requires that he shall bring himself within the strictest letter of the law. The proceeding by distress for rent is regulated in this State by the Act of 1834, ch. 192, the 5th sec. of which provides, " that every distress made contrary to the provisions of this Act, shall be illegal and void. The first section of this Act requires that the affidavit shall specify the amount of rent claimed to be due, in dollars and cents, but the 3rd sec. requires, in addition to this, that the *account* of the landlord shall be prefixed to the warrant. The paper in this case is *not an account*, but a mere statement of a *balance*, without stating any of the items of debit or credit. The Legislature must have intended to require, in and by the *account*, a particular statement of the entire rent for a certain time, and of the credits, if any ; otherwise, it was folly to insist both upon an affidavit and an account. The account would only repeat the affidavit, and contain nothing in addition. A mere statement of a balance cannot be considered an account. The lease in this case was not for any particular and certain amount of rent per annum, but so many cents per perch for the stone that might be quarried, varying according to the quantity and quality of the stone quarried in each year, and in such a case, an account containing the items by which it is made up, is particularly necessary. The intent of the Act is to furnish the tenant, and more especially the stranger whose goods may be levied on, with the means of testing the accuracy of the ac-

count, and the latter could never protect himself against a false claim or collusion between the landlord and tenant, if a mere statement that there was a balance of rent due, which the tenant had (perhaps fraudulently) admitted should be considered a sufficient substitute for the account required by the Act. Such an account, to answer any useful purpose, should state the amount of rent, the time for which it is claimed, and the credits, if any, to which the tenant is entitled. The affidavit, as given in sec. 1, shows that this view is correct, because it provides that the landlord shall make oath that he has " not received, either directly or indirectly, any part or parcel of the said rent claimed to be due and in arrear, or any security, or satisfaction for the same except, *if any, the credits given.*" If it were sufficient to charge for a *balance* of rent, then all the latter part of the affidavit, referring to *credits given* in the account preceding, would have been totally useless and without meaning.

2nd. But this account does not state when the rent commenced, or when it matured, or whether the sum stated was a balance for a year, or a month, or any other period, but simply that a *balance* of quarry rent was due on the 31st of December, 1854. For all that appears in the account, the rent might have been due for a half dozen years, and when it fell due, might have been for $1,000, or even a greater sum, which, by sundry payments after it fell due, might have been reduced, on the 31st of December 1854, to the *balance*, as stated in the account. The papers under which the distress is made, should show upon their face that the landlord was *prima facie* entitled to resort to that remedy. It is not in every case of rent in arrear, that the landlord can distrain, and one object in requiring a sworn account, doubtless was to compel him to show in advance, upon the face of his proceedings, that his case was one in which he might distrain rightfully. The account, we contend, should, at least, contain sufficient to admit of the fair inference that the renting, where a money rent is claimed, was at a sum certain for a certain specified time. But here there is nothing, either in the account, affidavit, or warrant, from which we can infer anything in regard

to the rate or amount of rent, or the time for which it is claimed. The rent, as stated in the avowry, was ten cents per perch for building stone and seventy-five cents per perch for faced stone, but the account does not state nor furnish the means of ascertaining how many perches there were of each kind. The aggregate amount of the rent for the year is stated in the avowry at $1640. In the exception, it is stated to have been $719.21, but the account does not state, or furnish the means of ascertaining, what it was. Surely this cannot be considered such an account as the Act requires: it is entirely too uncertain. The Act of New York, of 1838, ch. 153, requires only an affidavit that the rent distrained for is due, omitting, altogether, the account, and yet every case in New York sustains the position, that the time for which the rent accrued, must be defined, and, in support of this point, we confidently refer to 15 *Wend.*, 368, *Marquissee vs. Ormston.* 17 *Wend.*, 417, *Jenkins vs. Pell*, and same case in 20 *Wend.*, 450, 2 *Hill*, 648, *Smith vs. Fyler.*

BARTOL, J., delivered the opinion of this court.

The decision of this appeal depends upon the construction of the Act of 1834, ch. 192, regulating the mode of levying distress for rent.

The rent reserved was in money, the amount thereof to be ascertained by computation of the quantity and kinds of stone quarried. This, in our opinion, was a certain money rent, within the meaning of the Act. That is certain which may be made certain. Under the statute of New York, which, in this respect, is similar to our own, in a case "where the rent reserved was three dollars per acre for all the improved land on the premises, the tenant agreeing to build a certain quantity of stone fence, a part at so much per rod, and the residue for such price as might thereafter be agreed upon by the parties, the whole to be applied towards the payment of rent," it was held that the rent was sufficiently certain within the statute. *Smith vs. Fyler*, 2 *Hill*, 648.

This being a case within the Act of 1834, the only question before us is, whether the account and affidavit, offered in evi-

dence, are a sufficient compliance with its provisions? Three objections are made to the account by the appellee:

1. That the time when the rent became due is not stated.

2. That the account does not state the whole amount of rent, and set out the credits.

3. That the period, during which the rent accrued, is not stated in the account.

The first objection is based upon a misconstruction of the account. In our opinion, it is necessary to state when the rent became due, but, according to our interpretation of the account, that is sufficiently stated. It is in these words:

"BALTIMORE, *February 2nd,* 1855.

*Mr. James Whitelock,*

To *Andrew B. Cross,* DR.

To balance of quarry rent due Dec. 31st, 1855, on the quarry at Rock Run, Cecil county, which formerly belonged to estate of W. L. Cross,    -    -    - $591.00"

Notwithstanding the ingenious criticism of the appellee's counsel, we think the fair interpretation of this is, that the quarry rent became due the 31st of December 1855, and the balance therein stated is charged as remaining unpaid at the date of the account.

The second objection is not sustained by any thing in the Act of Assembly. The 3rd section requires that there shall be prefixed to the warrant, "an account stating in dollars and cents the amount of rent claimed to be due and in arrear, ***** together with an affidavit or affirmation thereon *in substance* as required by the first section of the Act."

It is not necessary to state in the account the terms of renting, nor to set down the items showing the whole amount originally payable under the contract, and the credits thereon; it is sufficient "to state, in dollars and cents, the amount of rent claimed to be due and in arrear," verified by affidavit.

That has been done in the present case. The form of the affidavit prescribed in the first section need not be literally pursued; if it is substantially followed that is sufficient; the words, "except the credits, if any, which have been given," are designed to apply to a case where credits have been stated in the

Cross *vs.* Tome.

account, which may be done, but they do not make it necessary to state debits and credits.

In *Smith vs. Tyler*, 2 *Hill*, the affidavit stated a sum due as balance of one year's rent, ending in the month of January A. D., 1840, which the court held to be sufficient.

3. In support of the third objection several cases from New York have been cited, but a reference to them will show they are inapplicable, the provisions of the Act of 1834 being unlike the statute of New York in this particular. By the revised statutes of that State, it is expressly required, that the affidavit specify the amount of rent due, *and the time for which it accrued.* The decision in *Marquissee vs. Ormston*, 15 *Wend.*, 368, went upon those words. The court say: "Whatever reasons may have influenced the Legislature, the direction is clear and explicit, that the affidavit shall specify *the amount of rent due and the time for which it accrued.*"

In construing the Act of 1834, we do not think the principle ought to be adopted, which is applicable to the construction of statutes conferring special remedies, in contravention of the common law. The right of the landlord to distrain for rent in arrear, in a case like this, is one which he enjoyed by the common law. The Act of 1834 was intended to restrain and regulate that right for the benefit and protection of the tenant, and while its requirements must be complied with, they are to receive a sensible construction, looking to the object and design of the Legislature. These were to protect the tenant from onerous and oppressive proceedings by the landlord, and to prevent the levying of excessive distress, by requiring the sum claimed, as actually due and in arrear, to be clearly stated, and verified by oath. The amount actually due is always open to examination on proof, in the action of replevin. Our Act nowhere requires the time, during which the rent has accrued, to be stated in the account or affidavit; in this respect it is unlike the statute of New York. The time when the rent becomes due, it is necessary to state for the security of the tenant against being called on a second time for the same debt, as well as to show that it is such arrear of rent as may be lawfully collected by distress.

33     v. 14.

In our opinion, the account and affidavit in this case are sufficient, and ought to have been admitted in evidence.

*Judgment reversed and procedendo ordered.*

(Decided July 15th, 1859.)