LOUIS DE BEBIAN *vs.* CARLOS GOLA. OCTAVE CAL-VET, trading as J. CALVET & Co., and J. S. BRANCKER.

*Attachment—Affidavit—Clerical misprision—Bill of Exchange or Promissory note written in a Foreign language—Declaration in the Short note case—Amendment—Official seal to a Personal contract.*

In an attachment on warrant, the certificate of the justice of the peace stated that the attaching creditor made affidavit that his debtor was indebted to him " in the full and just sum of five thousand and five hundred " ———, omitting the word " *dollars;* " but the warrant issued by the same justice, authorized an attachment to issue for the " sum of five thousand and five hundred dollars, current money, in the said affidavit specified." HELD:

That the omission of the word " *dollars* " in the certificate of the affidavit, was supplied by the warrant, and that such omission should be treated as a clerical misprision.

A bill of exchange or promissory note written in a foreign language, constitutes as good a cause of action or evidence of debt, to be produced by an attaching creditor before the justice of the peace at the time he makes his affidavit, as if such bill or note was written in English.

Such bill or note need not be accompanied by a translation at the time of producing it before the justice. All that the law requires is that the note or evidence of debt upon which the debtor is indebted, should be produced before the justice. This requirement is fulfilled by the production of a note written in a foreign language.

De Bebian, *et al.* *vs.* Gola.

It is time enough at the trial, to offer proof of the translation of such bill or note.

A declaration filed in the short note case can be amended. The statute authorizing amendments includes declarations in attachments.

M., the Italian Consul at Baltimore, borrowed certain sums of money from G. and gave him notes for the same, affixing to the notes the official seal of the Italian Consulate. HELD:

That such notes were not sealed instruments in the legal acceptation of that term.

To one of the notes so given, M. prefixed to his signature the term, " The Vice-Consul of Italy." HELD:

That this addition was a mere *discriptio personæ*, and did not change the character of the transaction, which was simply a personal contract between M. and G.

APPEALS from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court. It was admitted in the Court below, at the hearing of the motions to quash, for the purposes of this appeal, that Octave Calvet, trading as J. Calvet & Co., John S. Brancker and Louis de Bebian, had duly issued attachments against Ernest de Merolla, as an absconding debtor, on debts due them respectively by said defendant; that the attachments were still pending, and that under their attachments the goods attached in the Gola case were seized by the sheriff, subject to the attachments that preceded them respectively, as set forth in the return of the sheriff.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and RITCHIE, J.

*William S. Bryan, Jr.,* for the appellant, De Bebian.

*M. R. Walter,* for the appellants, Calvet and Brancker.

*Philip A. Bruce,* and *Charles Poe,* for the appellee.

De Bebian, *et al. vs.* Gola.

Stone, J., delivered the opinion of the Court.

This is a contest between different attaching creditors of Ernest de Merolla, an absconding debtor. Gola, the appellee, attached certain property of Merolla, and the appellant De Bebian, another creditor of Merolla, moved to quash the attachment. The motion was overruled and an appeal taken. Several reasons have been assigned why the attachment should be quashed.

One of these reasons is, that in the affidavit made by Gola, the attaching creditor, the word "dollars" is omitted.

In the certificate of the affidavit made before the justice of the peace, and returned to the Court, the word "dollars" is omitted, but in the warrant directed to the clerk, and which is the authority for issuing the attachment, that omission is supplied. The clerk of the Superior Court was directed upon the receipt of that warrant, and the oath and voucher, to issue an attachment for the sum of five thousand and five hundred dollars "in the said affidavit specified." The several notes produced before the justice amount to the said sum of five thousand and five hundred dollars. It is evident from these facts, that the omission of the word dollars in the affidavit was a mere clerical error of the justice, and that the attaching creditor did really do all that the law required him to do. That is, that he made the affidavit that Merolla was justly and *bona fide* indebted to him in the sum of five thousand and five hundred dollars over and above all discounts, and that he then and there produced his vouchers showing that amount of indebtedness. The omission of the word "dollars" in the certificate of the justice, is sufficiently supplied in the warrant, and it should be treated as a clerical misprision. *Jean vs. Spurrier*, 35 *Md.*, 110.

Another objection urged, is, that there were three notes due to the attaching creditor, two of them written in English, and one in the Italian language. That the one writ-

De Bebian, *et al. vs.* Gola.

ten in Italian was the only note that had fallen due at the time the attachment was issued, and that being written in a foreign language, and unaccompanied by a translation, this voucher did not show a *prima facie* case of indebtedness.

A bill of exchange or promissory note written in a foreign language, constitutes as good a cause of action in the Courts of this country, as a bill or note written in English. It may require proof, and have to be translated to the Court or jury, but the bill or note is *the cause of action.* A bill or note written in English requires proof of the signature before the judgment is rendered, (unless it is admitted at the trial.) But proof of the signature is not required at the time of bringing suit. So a suit may be brought on a foreign bill of exchange without any proof offered of a translation at the time of instituting the action. It is time enough to offer such proof at the trial.

All that our attachment laws require, is, that the note upon which the absconding debtor is indebted should be produced before the justice. He is not required to produce any evidence whatever tending to show that the signature is genuine, or, in case of an endorser, that the note was duly protested, etc. *Dawson vs. Brown,* 12 *G. & J.* 53; all such are matters of *proof at the trial.* So in the case of a note written in the Italian language, the contents of the note are a matter of proof at the trial. It is enough if the attaching creditor produces the note and makes affidavit that his debtor is justly and *bona fide* indebted to him *upon the note* which he then produces, in a certain sum over and above all discounts. If it turns out at *the trial* that he is not so indebted, the attaching creditor loses his case. If the note in this case, written in Italian, was in reality not what the attaching creditor claimed it to be, that is, a note for fifteen hundred dollars, it is competent for the contesting creditors to show that fact and thus defeat his claim. But the *onus* is upon them to

do so. Until they show to the contrary, we must presume the note to be what the plaintiff swears it is, a note for fifteen hundred dollars.

We do not think it necessary to decide the question whether an attachment against *an absconding debtor* for a debt, the time for payment of which has not arrived when the attachment issued, is valid or not, as a part of the debt claimed in this case, was already due and payable, and an attachment will not be quashed if any part of the claim upon which the attachment issued is sustained at the trial. *Dawson vs. Brown,* 12 *G. & J.* 53.

Another objection urged is that the short note case is in *assumpsit,* while the vouchers or causes of action are sealed instruments. If this objection were well founded, the defect could be remedied by amendment. Our statute of amendments extends to, and includes the declarations filed in attachments, as well as in other cases. *Norris vs. Graham,* 33 *Md.* 56.

But we think no amendment necessary. There is nothing whatever on the face of these notes to show that Merolla intended to make them sealed instruments in the legal acceptation of that term, or that Gola received them as such. It is apparent that Merolla borrowed these several sums from Gola at a short date, and that he, Merolla, promised to return them, and that Gola looked to him for the money. The seal impressed upon the paper, was not De Merolla's seal, but the seal of the Vice-Consulate of Italy, at Baltimore. He may have thought it added to the respectability of the transaction to impress his official seal on the paper, and even in one case to prefix his title of "Vice-Consul of Italy" to his name, but the papers themselves only amount to an acknowledgment that he, Merolla, had borrowed these sums of money and would return them. What "use" he put the money so borrowed to, is and was entirely immaterial to the lender, and does not affect the contract. There are many "uses" that De Merolla could

De Bebian, *et al. vs.* Gola.

have borrowed this money for, beside for the " use of the Vice-Consulate of Italy ;" but none of such " uses " could affect the contract between Gola and himself, whether expressed in the receipt or not.   The theory that these notes or receipts are obligations resting upon the " Vice-Consulate of Italy, at Baltimore," and to be assumed and paid by De Merolla's successors in office, or to put the matter plainly, that the Italian Government, for that is what such a theory would mean, would issue bonds or pay for all money borrowed by a Vice-Consul, does not deserve any serious consideration.   We think the judgment should be affirmed.

*Judgment affirmed.*

(Decided 22nd July, 1885.)

RITCHIE, J., filed the following dissenting opinion :

The appellee caused an attachment on warrant to be issued for the sum of $5500 against Ernest De Merolla as an absconding debtor.   As evidences of debt three due bills or promissory notes were produced aggregating the amount named.   The form of the first is that of the other two, except in date and amount, and that one of them has the words above the signature, " Vice-Consul of Italy." Translated it reads :

. "Royal Consular Agency of Italy,

Baltimore 2 June, 1882.

" Received from Charles Gola, Esq., for the use of this Vice-Consulate of Italy, one thousand, five hundred dollars, to be returned within ninety days, with the usual interest and commissions.

. E. DE MEROLLA.

(Seal marked,

" Royal Consular Agency of Italy, Baltimore.")

De Bebian, *et al. vs.* Gola.

In the affidavit the appellee makes oath that said Merolla " is justly and *bona fide* indebted to him in the full and just sum of five thousand and five hundred ———— with interest from —–— over and above all discounts," &c., the blanks being left thus unfilled, and no amount of indebtedness whatever in dollars being specified.

In the warrant of the justice, however, he directs the clerk " on receipt of this warrant, and the above oath, and annexed voucher on which the same is granted," to issue an attachment, &c., " to answer unto the said Charles Gola the above mentioned sum of five thousand and five hundred dollars, current money, in the said affidavit specified," &c.

As no sum is in fact specified in the affidavit, the question is, on the motion to quash for that omission, whether from the vouchers and the language of the magistrate in the warrant, the word *dollars* can be taken as sworn to and inserted. The inquiry is not,—assuming the appellee did swear to five thousand and five hundred *dollars*, and the justice, from mere inadvertence, omitted to mention the word *dollars*,—whether he could have subsequently amended the affidavit; but whether looking to the record as it now stands, we can conclusively determine from it, first, that the appellee did not himself make the omission, and, secondly, that the affidavit is not required in itself to furnish the evidence of what was sworn to. The magistrate's warrant simply undertakes to recite what was sworn to, and is but the declaration or unsworn version of the magistrate to that effect. It is clear the affidavit of the party is required to set forth the jurisdictional facts, and only the person making it is competent to furnish them, and they must be averred, and be received *prima facie* as true, only under the solemnity of an oath. One of these jurisdictional facts is the *amount* of indebtedness " over and above all discounts." On the face of the present oath, and as it itself appears in the record, no such

amount is given. At the present stage of the case, even if at some other, we do not think this material averment can be supplied upon the mere declaration of the magistrate to the clerk in his warrant, which even if it can be looked to is contradicted by an inspection of the affidavit itself. Nor can the vouchers supply such an omission, because while the evidences of debt must accompany the affidavit, that is an independent requirement, and the affidavit is an act separate and distinct from the production of the vouchers, and must, besides the sum specified, contain the averment "over and above all discounts," so that the *bona fide* amount still due may appear, in view of possible payments or proper set-offs, which would reduce the indebtedness apparent on the face of the vouchers. There are three distinct conditions precedent to issuing an attachment; the affidavit, the production of the vouchers, and the warrant of the magistrate; each of these for itself must meet the statutory requirements.

Remedy by attachment "being a jurisdiction derived from statutory law, no principle is better established than that the attachment proceedings *must upon their face show affirmatively,* that the requirements of the statute have been substantially complied with, otherwise the Court issuing the attachment would be acting without jurisdiction, and the judgment thereupon rendered would be void." *Matthews & Zollikoffer vs. Dare & McClure,* 20 *Md.,* 265; *Coward, Garn. vs. Dillinger & Stevenson,* 56 *Md.,* 61. And in *Farrow, et al., Garn. vs. Hayes & Co.,* 51 *Md.,* 498, this Court says:

"Without doubt the decisions in Maryland have gone as far as those of any State in the Union, in requiring attachment proceedings to be in strict conformity with the requirements of the statute, and especially is this true in regard to the affidavit which the law says shall be made before the writ is issued. By the terms of the Act of 1864, it is declared, that ' before any such writ of attachment

De Bebian, *et al. vs.* Gola.

shall be issued, the plaintiff, or some person in his behalf, shall make an affidavit before the clerk of the Court from which said attachment shall issue, stating ' certain prescribed facts, [among them the amount of the indebtedness over and above all discounts,] and the omission from the affidavit of any of the substantial words thus prescribed, will unquestionably be fatal."

In the case of *Halley, Ex'r vs. Jackson, et al.*, 48 *Md.*, 254, where the question was the right to amend the affidavit in an attachment by striking therefrom the name of one of the defendants, the Court thus speaks:

" The affidavit before a notary, and the warrant of the justice to the clerk, are from a jurisdiction separate from that of the Circuit Court, and the latter can exercise no power of amendment over them. They lie at the foundation of the proceeding in attachment, which must be strictly followed, because the remedy is a statutory one, and if defective, the whole proceeding must fail. If the Circuit Court were to exercise the power of amending the affidavit, so as to accommodate it to the circumstances and facts developed in the progress of a case of attachment, it would cease to be a condition precedent in that form of proceeding, and inconsistent with the spirit and object of the law requiring it to be made by the plaintiff. If it could be amended in one important respect, it might also be in another, until its whole character was changed, and the party affiant made to appear as presenting a state of facts different from those actually sworn to."

*Drake on Attachment, sec.* 89, speaking in regard to *ex parte* attachment proceedings under any system requiring an affidavit as the ground for issuing the writ, states as an established proposition, that " If there be no affidavit, or if there be one, but with a total absence therefrom of statement of any fact prescribed by law as essential to the issue of the writ, then, in either such case, the writ is *coram non judice* and void."

De Bebian, *et al. vs.* Gola.

He further states, in *sec.* 95: "In every affidavit for an attachment, there are two distinct parts, one relating to the plaintiff's cause of action and the amount due from defendant to him, the other to the facts relied on as a ground for obtaining the writ. In regard to the first, it is as necessary to comply with all the requirements of the law, as in reference to the second. If the law prescribe the terms on which the plaintiff shall allege his claim, those terms must be fulfilled, or the attachment will fail." And in *sec.* 104*a*, which seems directly applicable to this case, he says: "The leaving of a blank in the part of an affidavit which was intended to state the ground of attachment—as for instance where the affidavit reads, 'and the said ——— resides without the limits of this State,'—is fatal to the attachment." See also *Black vs. Scanlon,* 48 *Ga.,* 12; *Marshall vs. Abbey,* 25 *Texas,* 342. In the latter case, the Court pertinently remarks, it is no hardship to require the simple conditions of the statute to be complied with, instead of throwing upon the Court the burden of seeking to cure the negligence of the affiant by construction.

I cannot escape regarding the omission in the affidavit in this case as fatal to the attachment.

The case of *Jean vs. Spurrier,* 35 *Md.,* 110, cited by the appellee, it is true, decided that a similar omission in the landlord's affidavit was supplied by reference to the account which it was meant to certify. But a more stringent rule of construction is applicable to attachment proceedings. The tenant is presumably within the jurisdiction ready to protect himself, and there is not the same necessity to guard against hardship and oppression as in the former case. Moreover, there is a broad distinction between a distraint and an attachment, recognized in *Cross vs. Tome,* 14 *Md.,* 257, where the Court in considering the affidavit of a landlord, say: "In construing the Act of 1834, we do not think the principle ought to be adopted,

which is applicable to the construction of statutes confer-
ring special remedies, in contravention of the common law.
The right of the landlord to distrain for rent in arrear, in
a case like this, is one which he enjoyed at common law."

But there is an additional ground for quashing the at-
tachment, arising from the nature of the contracts, which
we think must prevail.

The short note declares upon the evidences of debt as
filed in *assumpsit,* and alleges the personal liability of De
Merolla. It is contended by the appellants that the obli-
gations were given by De Merolla only in his representa-
tive character as Consul, and that the appellee must resort
for their payment to the Vice-Consulate, or in effect, to the
Italian Government alone ; and further that the contracts
are under seal, and must be declared on as specialties.
This attachment does not proceed upon fraud practiced by
De Merolla in procuring the money lent on the notes, but
on the notes themselves as produced. There must be an
agreement between the cause of action as set out in the
affidavit and vouchers, and the averments of the short
note or declaration; otherwise the attachment will not be
supported. *Browning, Trustee vs. Pasquay,* 35 *Md.,* 294;
*Dellone, et al. vs. Hull,* 47 *Md.,* 112. If it be apparent
from the face of the instruments that the debt was not
contracted by De Merolla individually, but was on behalf
of his Government alone, the variance will be fatal with-
out reference to whether the instruments are sealed or not.

It is well established that the rules relating to pri-
vate agents and their principals are not applicable to pub-
lic officers.

*Story on Agency,* in *sec.* 302, having previously dis-
cussed the general law of agency, including that relating
to agents or factors of foreign principals, says:

"Hitherto we have been considering the personal lia-
bility of agents on contracts with third persons, in cases
of mere private agency. But a very different rule in gen-

De Bebian, *et al. vs.* Gola.

eral prevails in regard to public agents; for in the ordinary course of things, an agent, contracting in behalf of the government or of the public, is not personally bound by such a contract, even though he would be by the terms of the contract, if it were an agency of a private nature. The reason of the distinction is, that it is not to be presumed either that the public agent means to bind himself personally in acting as a functionary of the government, or that the party dealing with him in his public character means to rely upon his individual responsibility. On the contrary the natural presumption in such cases is that the contract was made upon the credit and responsibility of the government itself, as possessing an entire ability to fulfil all its just contracts far beyond that of any private man ; and that it is ready to fulfil them not only with good faith, but with punctilious promptitude, and in a spirit of liberal courtesy. Great public inconvenience would result from a different doctrine, considering the various public functionaries the government must employ in order to transact its ordinary business and operations; and many persons would be deterred from accepting important offices of trust under the government, if they were held personally liable upon all their official contracts."

And in the section following adds: "This principle not only applies to simple contracts both parol and written; but also to instruments under seal which are executed by agents of the government in their own names, and purporting to be made by them on behalf of the government ; for the like presumption prevails in such cases that the parties contract, not personally, but merely officially within the sphere of their appropriate duties." Cited in the margin, among others, are the leading cases on this subject of *Hodgson vs. Dexter*, 1 *Cranch*, 345 ; *Macbeath vs. Haldimand*, 1 *Term R.*, 172; *Unwin vs. Wolseley*, 1 *Term R.*, 674.

*Kent* in his *Commentaries, vol.* 2, *marg. p.* 633, affirms the same doctrine, as indeed do all the text books, and adds : " But the agent in behalf of the public *may* still bind himself by an express engagement, and the distinction terminates in a question of evidence. The inquiry in all cases is, to whom was the credit, in the contemplation of the parties, intended to be given."

This question, where the contract is in writing, must be primarily determined by recourse to the instrument itself.

BIGELOW, C. J., in *Bray vs. Kettell, et al.,* 1 *Allen,* 83, in construing the contract of an agent for a foreign principal, thus succinctly announces the doctrine to be : " But even in such a case, the fact that the principal is resident in a foreign country, is only one circumstance entering into the question of credit and is liable to be controlled by other facts. So in the case of a written contract; it depends on the intention of the parties. But this, as in all other cases of written instruments, must be determined mainly by the terms of the contract. There may be cases where the language of the contract is ambiguous, and it is doubtful to whom the parties intended to give credit, in which the circumstance that the principal is resident abroad may be taken into consideration in determining the question of the liability of the agent. But when the terms of the contract are clear and unambiguous, it must be deemed the final repository of the intention of the parties ; and its construction and legal effect cannot be varied or changed by any reference to facts or circumstances affecting the convenience of the parties or the reasonableness of the contract into which they have entered."

Upon an examination of the evidences of debt produced in this case, it seems clear beyond question that De Merolla executed them, not in his individual or private, but in his consular or official capacity. They are dated at the Consulate office ; the sum borrowed is explicitly stated to be "for the use of this Vice-Consulate of Italy," not his

own use, and the obligation to repay the money is not expressed in the usual form of a personal undertaking, "I promise to pay," but the terms employed are, "to be returned," &c. Superadded to all this there is attached, not his private seal, but the public seal or stamp of the Vice-Consulate itself. This seal could perform no private office, but can be explained only as an attestation to an instrument of a public nature, whether to give it the legal character of a specialty, or furnish evidence of its genuineness is immaterial.

Many good reasons suggest themselves why the lender of the money would have preferred to give credit to the Vice-Consulate or the Government of Italy, instead of accepting without security, the merely personal obligation of De Merolla; and it is the only reasonable and natural construction of the terms of the instruments that such was their intention and effect.